UNITED STATES, Appellee,

v.

Robert W. FRAZIER, Corporal, U.S. Army, Appellant.

No. 66,104.
CM 8903855.

U.S. Court of Military Appeals.

Argued Aug. 1, 1991.

Decided Sept. 20, 1991.

For Appellant: *Captain Cynthia J. Rapp* (argued); *Lieutenant Colonel Russell S. Estey* and *Captain Timothy P. Riley* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Donna L. Barlett* (argued);. *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Maria C. Fernandez* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

On December 14, 1989, appellant was tried by a general court-martial composed of a military judge sitting alone at Fort Hood, Texas. Pursuant to his pleas, he was found guilty of conspiracy to steal, and larceny of military property of the United States, consisting of two Claymore Mines, two wire and blasting cap sets, and a firing device, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 USC §§ 881 and 921, respectively. The military judge sentenced appellant to a bad-conduct discharge, confinement for 3 years, forfeiture of $500 pay per month for 36 months, and reduction to E–1. The convening authority approved the sentence, and the Court of Military Review affirmed in a short-form opinion.

This Court granted review on the following questions of law:

## I

WHETHER THE MILITARY JUDGE ERRED BY PERMITTING, OVER DEFENSE OBJECTION, TESTIMONY TO THE EFFECT THAT TERRORISTS AND DRUG DEALERS WOULD HAVE A NEED FOR THE CLAYMORE MINES STOLEN BY APPELLANT.

## II

WHETHER THE MILITARY JUDGE ERRED BY PERMITTING THE TRIAL COUNSEL TO ARGUE, OVER DEFENSE OBJECTION, THAT APPELLANT WAS PROVIDING TERRORISTS AND DRUG DEALERS THE TOOLS TO INFLICT HARDSHIP ON INNOCENT CIVILIANS AND BY CONSIDERING THESE MATTERS IN SENTENCING APPELLANT.

We hold that no error occurred on the above grounds and affirm. *See generally* Mil.R.Evid. 611(b), Manual for Courts–Martial, United States, 1984.[1]

Appellant pleaded guilty to the above military offenses. The defense then presented an extensive sentencing case focusing on his excellent military character and his benign motivation for committing these crimes, *i.e.*, to help resolve his mother's financial and medical problems. As part of this case, it called Master Sergeant Harold Richards, appellant's first sergeant, who testified that appellant was an outstanding radar operator, "shoulders above" other E–4s, and a soldier who went the extra mile beyond his required duties.

On cross-examination, trial counsel asked Master Sergeant Richards the following questions:

Q. Let me ask you a little bit about the Claymore Mine. I'm sure you're familiar with it, aren't you?

A. Yes, sir, the M18A1, yes, sir.

Q. What's it used for?

A. It's for killing people, sir.

Q. Now we've got the M–16 and there is a counterpart of the M–16 out in the civilian world, right?

A. Yes, the AR 15, I believe, sir.

Q. Okay, is there a counterpart for the Claymore Mine out there?

A. There is no such thing as a counterpart for the Claymore Mine, sir.

Q. So its one and only use is to kill people, is that correct?

A. Yes, sir.

Q. Now let me ask you this: You heard the accused say he was going to sell it?

A. Yes, sir.

Q. *What type of people do you sell Claymore Mines to?*

DC: Objection. That's speculative and it's not something that this witness is likely to have knowledge of.

TC: Your Honor, I think the individual can use his common sense and say

DC: Sir, he's asking him to speculate as to what type of people might make a certain purchase. I don't see that as probative.

MJ: The objection is overruled.

Q. *What type of people do you think would have a need for a Claymore Mine out in the civilian world?*

A. *My own personal opinion, sir, would be anybody that's deranged in the mind to a point to where he wants to do bodily [sic] to something or someone.*

Q. *Terrorists maybe?*

A. *A good possibility, sir.*

Q. *Maybe drug dealers?*

A. *A good possibility, sir, anybody.*

(Emphasis added.)

Later on government counsel made the following argument to the military judge on sentence:

**1.** Rule 611. Mode and order of interrogation and presentation

    \*    \*    \*    \*    \*    \*

(b) *Scope of cross-examination.* Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The military judge may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

You heard the testimony. The only purpose of those explosives he stole is to kill people. That's it. They're a people killer. You don't hunt with them. You don't fish with them. You kill human beings. And what type of people have a need for this type of explosives? Well people who have a need to kill other people. *Terrorists, drug dealers, those people that cause the majority of the crime within the United States and abroad. They cause most of the pain in people's lives. The accused was giving them the tools to further inflict hardship on innocent civilians ...*

DC: I'm going to object here. He seems to be arguing facts that certainly aren't in evidence. There is nothing in evidence to indicate that the accused was giving Claymore Mines to terrorists.

TC: Your Honor, I think there was testimony to indicate from Master Sergeant Richards that the type of individuals that would buy or need this type of explosive would be terrorists or drug dealers.

MJ: The objection is overruled.

TC: Thank you, Your Honor. He was supplying a need. While his personal problems or his mother's problems may be great, they in no way excuse his conduct. They in no way justify his conduct. Every individual in his life faces stress at some point. It's not always great, but at some point people have to face stress and tremendous pressure. The majority of those people handle it well. Some don't. Those that don't could end up costing other individuals their lives. His holding on too tight, as he said, to his mother, could have cost somebody their life. It could have cost somebody their life. Now there is a reason, when you look in the Manual, for the different sentences of just straight larceny and larceny of government explo-

sives, and the *reason is Congress has determined that it's a much more serious offense, because those people who tend to steal government explosives— those explosives might end up in the hands of people who don't know how to operate them or who operate them irresponsibly. And that's what the accused was going to do. He was going to sell these, but he didn't know to who, and he probably didn't even care.* If they were going to people who could have used them irresponsibly, maliciously, and wantonly.

(Emphasis added.)

---

■ Appellant's initial objection to the challenged questions of trial counsel was that they called for speculation from this defense witness. Indeed, if Master Sergeant Richards had been asked to whom did appellant actually sell or plan to sell these military explosives, this objection would be well taken. No foundation was established that Master Sergeant Richards had any knowledge of appellant's theft or subsequent disposal plans. *See* Mil.R.Evid. 602.[2]

However, Master Sergeant Richards was not asked those particular questions. Instead, he was asked to whom these military explosive devices *might* be sold in the civilian community or who in that community *might* want them. In addition, these questions were prefaced with other questions, unobjected to by the defense, which established the sergeant's familiarity with this military property, its dangerous nature and exclusively lethal purpose, and the absence of a civilian counterpart. His answers to these questions provided ample basis for his subsequent personal opinion as to the *potential* lethal use of these items in the civilian community. *See* Mil.R.Evid. 701.[3]

2. Rule 602. Lack of personal knowledge

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness. This rule is subject to the provisions of Mil.R.Evid. 703, relating to opinion testimony by expert witnesses.

3. Rule 701. Opinion testimony by lay witnesses

If the witness is not testifying as an expert, the testimony of the witness in the form of

■ Defense counsel's second objection to the challenged questions was on relevance grounds. Mil.R.Evid. 401 and 402. We note, however, that appellant stated that he stole the military explosives to relieve his sick mother of her onerous financial obligations. Nevertheless, he admitted that the desired money would come from his share of the proceeds of the sale of these items to an unidentified buyer secured by his accomplice. In addition, the defense witness, Master Sergeant Richards, testified that appellant was an outstanding soldier who aggressively assumed the responsibilities of a noncommissioned officer when he was only an E–4.

Clearly, appellant's sense of responsibility was a critical issue in this case upon which the defense sought to capitalize for purposes of sentence mitigation. *See* RCM 1001(c), Manual, *supra.* Cross-examination of Master Sergeant Richards concerning the deadly potential of these military explosives in the civilian community had logical bearing on this issue. Mil.R.Evid. 401 and 402. It provided a more complete picture of appellant's sense of responsibility and the nature of his crimes. Such questioning was clearly permissible under Mil.R.Evid. 611(b).

■ Our review of the record supports the further conclusion that the military judge recognized the limited purpose of Master Sergeant Richards' testimony and properly considered it in this light. In announcing his sentence, he made the following comments:

MJ: Before passing upon sentence, I would like to make the following observations, Corporal Frazier: That this has been an extremely difficult case for me to determine an appropriate sentence. It's most unusual, in that we have an extremely serious offense committed by an outstanding soldier. It is rare that, upon the commission of an offense of this gravity, that the First Sergeant, the XO, and the Company Commander would come forth and speak so highly on your behalf. They all indicated that you were indeed an outstanding soldier and in their opinion, one of the best, if not the best, E–4 in the unit. I've also considered your testimony that the offense was done, apparently, irrationally in order to obtain money to send to your mother, who you have testified has had numerous expenses due to many problems recently. On the other hand, as pointed out by the prosecution, this is a very serious offense. *The stealing of a Claymore Mine with the idea of indiscriminately selling it is very, very serious. A Claymore Mine, as emphasized by the trial counsel, has but one purpose, and that apparently is to kill people.* It is with all of this in mind that, Corporal Robert W. Frazier, this court sentences you: ...

(Emphasis added.) Even assuming that trial counsel lost sight of his proof in the earlier portion of his closing argument, it is clear that the military judge did not. Art. 59(a), UCMJ, 10 USC § 859(a).

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

EVERETT, Senior Judge (concurring in the result):

Reduced to its essence, the question presented in this appeal is—How far down the path of speculation and argument may a witness be led by the prosecutor in an effort to show the harmful potential results of an accused's crime? Although the Army Court of Military Review has ventured into this area somewhat, *see, e.g., United States v. Stevens,* 21 MJ 649 (1985); *United States v. Young,* 8 MJ 676, *pet. denied,* 9 MJ 15 (1980), counsel have cited and I have found no especially authoritative case out of this Court.

As the court in *Stevens* put it: "It is axiomatic that counsel may argue and the sentencing authority may consider any *rea-*

---

opinions or inference is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness of the determination of a fact in issue.

*sonable inference* from the evidence." 21 MJ at 652 (emphasis added). However, the circumstance that trial counsel may argue a particular inference or the sentencing authority may consider it does not necessarily mean that a witness may testify to that inference. Thus, even if Master Sergeant Richards was an expert on Claymore Mines and their destructive potential—an expertise which was never established at trial—there is no indication that he also was an expert as to who might want to buy them. Instead, trial counsel wanted the witness to testify about potential users on the basis of "common sense." In so doing, the prosecutor indirectly confirmed that Master Sergeant Richards had no particular expertise on the matter as to which he was invited to apply his "common sense."

Obviously I have no quarrel with the witness using "common sense." My point, however, is that court members or, as here, a military judge can employ this quality just as well as a witness. Therefore, when, over objection, trial counsel seeks to adduce "common sense" conclusions from a witness, this is no more than smuggling argument into the record under the guise of sworn testimony.

Not only does this waste the time of the court, but also it violates Mil.R.Evid. 701, Manual for Courts–Martial, United States, 1984, which prescribes:

> If the witness is not testifying as an expert, the testimony of the witness in the form of opinions or inference is limited to those opinions or inferences which are (a) *rationally based* on the perception of the witness and (b) *helpful* to a clear understanding of the testimony of the witness of the determination of a fact in issue.

(Emphasis added). *See also* Mil.R.Evid. 401 (" 'Relevant evidence' means evidence having any *tendency to make the existence* of any fact that is of consequence to the determination of the action *more probable or less probable* than it would be without the evidence." (Emphasis added.)) and Mil.R.Evid. 402 ("All relevant evidence is admissible," with certain exceptions.).

Based on these considerations of reasonableness and helpfulness, I suggest that the answer to the question I posed at the outset might well be: The path goes as far as logic more than likely leads, but it ends when true speculation begins.

Thus, Master Sergeant Richards was free to testify that the only purpose of the Claymore Mine is to kill people. Based on this testimony—and probably even without this testimony—trial counsel properly could argue that a likely result of Frazier's removal of Claymore Mines from military control would be the killing of many people.

Terrorists and drug dealers *do* kill people—with Claymore mines and otherwise. Thus, trial counsel could also argue that Frazier's intended sale of the mines might place them in the hands of terrorists and drug dealers and result in many fatalities. However, Master Sergeant Richards, so far as the record indicates, had no knowledge of the use of mines or other weapons by such individuals. Thus, when trial counsel asked Richards if terrorists and drug dealers were the type of people who could use the mines, it seems rather obvious that the purpose of the prosecutor was to incite an emotional reacion on the part of the sentencing authority.

In this case, however, it does not appear that Frazier suffered any fair risk of prejudice by the receipt in evidence of this testimony to which the defense had objected. *See* Art. 59(a), Uniform Code of Military Justice, 10 USC § 859. The military judge's comments—notwithstanding his ruling that admitted this testimony over defense objection in the first place—indicated only that he considered the people-killing likelihood, not the emotional speculation as to who would be doing this killing.

Moreover—given the seriousness of the crime, the intended purpose of the theft (to sell these dangerous devices), and the violation of trust that appellant committed in taking these mines that had been entrusted to him—the sentence is not unreasonably severe, even considering appellant's good military record. I am convinced that, even

without the testimony and argument of concern, the military judge would not have adjudged a less harsh sentence. *See United States v. Sales,* 22 MJ 305, 307–08 (CMA 1986); *United States v. Suzuki,* 20 MJ 248, 249 (CMA 1985).

For these reasons, I concur in the result.