OPINION OF THE COURT
CAIRNS, Senior Judge:
Pursuant to his guilty pleas, appellant was convicted of conspiracy to commit larceny of military property, conspiracy to commit wrongful disposition of military property, wrongful disposition of military property (two specifications), and larceny of military property in violation of Articles 81, 108, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 908. and 921 (1988) [hereinafter UCMJ]. Officer members sentenced appellant to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to Private El. In conformance with a pretrial agreement, the convening authority approved the sentence, but suspended for two years that portion of the sentence extending to confinement in excess of two years.
The appellant alleges that the military judge committed plain error of constitutional magnitude when he instructed the members regarding appellant’s affiliation with a white supremacist organization, and that he erred to appellant’s substantial prejudice by abandoning his role of impartiality.[1] We hold that the military judge neither erred by the instruction he gave the members nor deviated from an impartial role.
Facts
According to the stipulation of fact entered into pursuant to a pretrial agreement, appellant conspired to steal, and in fact stole, military property as follows: ammunition, military flares, tear gas grenades, artillery and grenade simulators, M-16 magazines and various weapons parts. After conspiring to wrongfully dispose of some of the stolen military property, appellant and his co-conspirators gave part of the munitions to individuals they believed were affiliated with a white supremacist organization.[2] The stipulation *782 states that, “[t]he accused and his co-conspirators were motivated by an extremist philosophy and held white supremacist views”, and further that they did not want money for the stolen property because “it was for the movement.”
After the military judge advised the members of the appellant’s guilty pleas, the trial counsel published the stipulation of fact and rested without offering further evidence in aggravation. The defense called appellant’s commander and first sergeant who testified that the appellant was a responsible, reliable soldier whose overall duty performance was outstanding. On cross-examination, both witnesses agreed that morale, good order, and discipline could suffer because appellant’s criminal conduct was motivated by white supremacist views.
In an Article 39(a), UCMJ, session held prior to sentencing arguments, the military judge sua sponte solicited counsels’ views on a limiting instruction regarding the white supremacist evidence. The military judge expressed concern that the members could improperly punish the appellant for his political or social views or speculate about the nature of the white supremacist group to whom the stolen military property had been given. After discussions with counsel, the military judge fashioned the instruction which appears later in this opinion.
Before the judge gave his final sentencing instructions, both the trial counsel and defense counsel argued before the members that the appellant should not be punished for his beliefs or associations. The trial counsel, however, also emphasized that the appellant and his co-conspirators were motivated by hate and racist views when they stole and wrongfully disposed of dangerous military property. She argued that when dangerous military property is placed into the hands of white supremacists, “there’s no telling what type of harm [it] could have done to individuals of other races ...” and to society in general. Finally, trial counsel argued that the military has been at the forefront of equal rights and opportunity, and “when we see soldiers who are abusing their positions of trust in a way that may hamper equal rights for all individuals in the Army, or society in general, we need to punish them for that.” The defense did not object.
The defense counsel argued that the government’s comments were based on speculation. He pointed out that the property was not transferred to “any white hate group,” but rather it was given to undercover Bureau of Alcohol, Tobacco, and Firearms agents. Defense counsel argued that “what might have happened is not important; it’s what did happen” that should be considered during sentencing. Thereafter, defense counsel concentrated the majority of his argument on the strong good soldier testimony that was in evidence.
After arguments, the military judge gave the following limiting instruction:
Now there’s been some specific information that has been provided to you during sentencing that I need to review with you. You have had testimony that the accused might have entertained certain views that society as a whole does not approve of ... views of being a white supremacist. You’ve also heard testimony that the accused might have been associating, drinking, having a party with members of a white supremacist group. As the trial counsel and defense counsel have pointed out, it is America [ — ] not constitutionally prohibited, certainly, and we do not punish individuals for entertaining particular social or political views. So therefore, whatever his political or social views were, and whatever his friendships were is not to be considered by you except to prove knowledge of who he was giving the items to. Secondly, I advise you that if you believe *783 the accused’s knowledge of the nature of the group was a factor in relinquishing the items to that group, or members of that group, you may consider the nature of the intended recipient group only for the purposes of its tendency, if any, to put potentially dangerous materials into the stream of the civilian community, and as it bears on the accused’s sense of responsibility. Now we do not know the name of the group. I’m sure that no one approves of a white supremacist group, but I suppose there are groups that are ... dangerous, or there are groups that are benign. We don’t know, and you can’t speculate on them. So in other words, you don’t go back and say, ‘Well, this must have been group XYZ, therefore, they would have done something so and so.” But you may consider the nature of the group if you first believe it was a factor in who he relinquished it to and you may consider the nature of the intended recipient for the purposes of its tendency, if any, to put potentially dangerous materials into the stream of the civilian community and as it bears on the accused’s sense of responsibility. (Emphasis added).
The trial defense counsel did not object to the instruction.
LAW
The First Amendment protects citizen’s abstract beliefs, as well as their right to join groups and associate with others who hold those same beliefs. Dawson v. Delaware, 503 U.S. 159, 162-63, 112 S.Ct. 1093, 1096, 117 L.Ed.2d 309 (1992). Thus, as a general proposition, a criminal defendant’s “abstract beliefs, however obnoxious to most people, may not be taken into consideration by a sentencing [authority].” Wisconsin v. Mitchell, 508 U.S. 476,-, 113 S.Ct. 2194, 2200, 124 L.Ed.2d 436 (1993).
Although members of the armed forces enjoy First Amendment freedoms, the fundamental need for good order and discipline can be compelling enough to warrant the limitation of those freedoms. United States v. Wilson, 33 M.J. 797 (A.C.M.R.1991). In other words, First Amendment rights in the armed services are “not unlimited and must be brought into balance with the paramount consideration of providing an effective fighting force for the defense of our Country.” United States v. Priest, 21 U.S.C.M.A. 564, 570, 45 C.M.R. 338, 344 (1972).
Department of Army policy states, in part, that “[t]he activities of extremist organizations are inconsistent with the responsibilities of military service.” Army Reg. 600-20, Army Command Policy, para. 4-12 (30 Mar. 1988). In striking a balance between individual freedoms and overriding interests in good order and discipline, the regulation prohibits active participation in organizations which espouse supremacist causes, and strongly discourages passive activities such as mere membership. Specifically prohibited are activities concerning extremist organizations that constitute breaches of law and order or are likely to result in violence.
The Supreme Court has recognized that “the Constitution does not erect a per se barrier to the admission of evidence concerning one’s beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment.” Dawson, 503 U.S. at 165, 112 S.Ct. at 1097. A person’s motive is a proper and useful factor in determining an appropriate sentence. United States v. Martin, 20 M.J. 227, 232 (C.M.A.1985) (Everett, C.J., concurring); United States v. Ringuette, 29 M.J. 527 (A.F.C.M.R.1989). Where racial animus is the motivating factor in the commission of an offense, a State may legitimately enhance penalties for such “hate crimes” and not violate First Amendment rights. Mitchell, 508 U.S. at 489-90, 113 S.Ct. at 2202. In recognizing that sentencing authorities should not have to exercise their important judgments in a vacuum, the Supreme Court has upheld the constitutionality of admitting evidence of a defendant’s membership in a racial organization to show racial motive in committing the crime. See Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983).
The military judge has the responsibility to give the members appropriate instructions on sentencing. Rule for Courts-Martial 1005 [hereinafter R.C.M.]. Instruc *784 tions should be tailored to fit the circumstances of the case by providing the members a fair statement of the issues and an explanation of the legal standards to be applied. See, R.C.M. 920 discussion. Absent plain error, failure to object to an instruction waives any error. R.C.M. 920(f) and 1005(f). Our standard of review for properly preserved allegations of instructional error is abuse of discretion. United States v. Damatta-Olivera, 37 M.J. 474 (C.M.A.1993); United States v. Vasquez, 42 M.J. 544 (AF Ct.Crim.App.1995).
Among the instructions required on sentencing, the military judge shall advise the members to consider all matters in extenuation, mitigation, and aggravation, whether admitted before or after findings. R.C.M. 1005(e)(4). The trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty. R.C.M. 1001(b)(4). However, the sentencing authority may consider only the evidence of record and reasonable inferences drawn from that evidence. United States v. Stevens, 21 M.J. 649 (A.C.M.R.1985), citing United States v. Clifton, 15 M.J. 26 (C.M.A.1983).
In assessing the seriousness of stealing and disposing of military munitions and explosives, the trial counsel may argue and the sentencing authority may consider reasonable inferences or possibilities based on the evidence. However, speculation or conjecture that exceeds the outer limits of reasonable inferences should not be considered. Stevens, 21 M.J. at 652; United States v. Frazier, 33 M.J. 260, at 264 (C.M.A.1991) (Everett, S.J., concurring).[3] The military judge can and should give limiting instructions to ensure that the members properly consider highly prejudicial evidence only for legitimate purposes. United States v. Levitt, 35 M.J. 114,119 (C.M.A.1992).
DISCUSSION
Evidence that appellant was motivated by white supremacist views when he wrongfully disposed of stolen military munitions to what he believed was a white supremacist group constitutes aggravating circumstances that directly relate to the offense. R.C.M. 1001(b)(4). This is especially true because racist attitudes and activities are perniciously destructive of good order and discipline in the armed services. The right to abstract racist beliefs and freedom of association must yield to the overriding military interest in good order and discipline when a soldier acts on those beliefs and associations in a manner that violates the law or is likely to result in violence. We conclude, therefore, that these stipulated facts were relevant on the issue of appellant’s motive, were properly admitted for consideration by the sentencing authority, and did not violate appellant’s First Amendment rights. Wisconsin v. Mitchell, 508 U.S. at 487-88, 113 S.Ct. at 2201; Dawson v. Delaware, 503 U.S. at 165-67, 112 S.Ct. at 1098; Barclay v. Florida, 463 U.S. at 949, 103 S.Ct. at 3424-25; United States v. Frazier, 33 M.J. at 262.
Contraiy to the implication in the appellant’s assignment of error, the military judge did not introduce the appellant’s affiliation with white supremacists to the members. What the military judge did was limit how the members used the stipulated white supremacist evidence in arriving at an appropriate sentence. We believe the military judge could have instructed the members that the appellant’s supremacist motive was a matter in aggravation because his active participation in furtherance of the white supremacist cause was inimical to good order and discipline. R.C.M. 1001(b)(4). Instead, he chose a more conservative approach by limiting the members’ use of the evidence more severely than required.
The military judge instructed the members that appellant was not to be punished for his friendships or political/social views, but that *785 they could consider appellant’s views to prove his knowledge of the nature of the group to whom he gave stolen military explosives. Further, if the members believed appellant’s knowledge was a factor in deciding to give the munitions/explosives to a particular group, they could consider the nature of the group: (1) for “its tendency, if any, to put potentially dangerous materials into the stream of the civilian community,” and (2) “as it bears on the appellant’s sense of responsibility.”
We believe the military judge did not err by giving these instructions. While not pattern instructions, they articulated a viable theory of relevance and, within that context, appropriately limited the members’ use of the white supremacist evidence during sentencing. Even under this constrained approach, the members could reasonably infer that these white supremacists, who sought to receive stolen military munitions and other dangerous equipment, might bring them to bear in illegal or destructive ways. As in Frazier, 33 M.J. at 261-62, the munitions they received from appellant were predominantly unique to the military and had no identifiable benign civilian use. These matters are not the product of speculation or conjecture which exceeds the outer limits of reasonable inferences. Stevens, 21 M.J. at 649; Frazier, 33 M.J. at 260. We conclude these were matters directly related to the offenses and constituted proper aggravation. Accordingly, we hold that the military judge did not abuse his discretion in giving the limiting instructions.
Finally, appellant is not entitled to relief for two additional reasons. First, the appellant’s unlawful delivery of dangerous materials to white supremacists was relevant to contradict the good soldier evidence that had been presented by the defense to show appellant’s sense of responsibility. Second, the trial defense counsel did not object to the limiting instruction as given. Since we find neither constitutional nor plain error, the issue was waived.
We turn now briefly to the second assignment of error: whether the military judge abandoned his impartial role by giving the limiting instruction. Having carefully reviewed the entire record, we find no evidence that the military judge departed from an impartial role. We find that the military judge was motivated to protect the appellant’s rights when he raised the issue of instructions on the white supremacist evidence. We conclude that the instruction as given protected appellant to a greater degree than was necessary. Accordingly, considering the totality of the record, we hold that the military judge maintained his impartiality. The assignment of error is utterly without merit.
The findings of guilty and sentence are affirmed.
Judge TOOMEY and Judge RUSSELL concur.

. Appellant’s assignment of error is as follows: THE MILITARY JUDGE COMMITTED PLAIN ERROR BY INSTRUCTING THE MEMBERS ON APPELLANT’S AFFILIATION WITH A WHITE SUPREMACIST ORGANIZATION IN VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION AND ALSO ERRED TO THE SUBSTANTIAL AND UNFAIR PREJUDICE OF THE APPELLANT BY ABANDONING HIS ROLE OF IMPARTIALITY AND BECOMING A PARTISAN ADVOCATE OF THE GOVERNMENT.

. Prior to wrongfully disposing of the military property, appellant discussed selling stolen military C-4 plastic explosives and agreed to sell a half pound of military TNT, hand grenade simulators, flares and numerous rounds of 5.56mm ammunition to these individuals. Subsequent to the wrongful disposition, and pursuant to a U.S. District Court search warrant, agents seized the following items from appellant's off-post storage locker as listed in the stipulation of fact: “34 stolen M-16 barrels; eight stolen U.S. military smoke canisters; three stolen U.S. military CS tear gas grenades; one stolen M-16 military magazine containing 30 stolen 5.56mm rounds of ammunition; one stolen military ammunition pouch containing 122 stolen 5.56mm military *782 ammunition; two stolen 5.56mm military Squad Automatic Weapon (SAW) pouches containing 200 stolen rounds each; one plastic garbage bag containing 305 rounds of stolen 5.56mm military ammunition; one stolen U.S. Army ammunition box containing 414 rounds of stolen 5.56mm military ammunition; twenty rounds of stolen 7.62mm military ammunition; one stolen U.S. military signal flare; one stolen one pound block of military TNT high explosive; one stolen one quarter pound of military TNT high explosive; one stolen medic bag containing two M-16 military magazines; three boxes of 10 safety lights, one box of 50 small safety lights, two D rings, and one stolen M-16 cleaning kit; and various stolen parts for an M-16 rifle.”

. Evidence of the indiscriminate sale of a Claymore mine, and what sort of people might be interested in buying Claymore mines, was held to be relevant in determining an appropriate sentence for a soldier convicted of conspiracy to steal and larceny of this dangerous military explosive.