490

UNITED STATES, Appellee,

v.

Henry AVILA, Jr., Staff Sergeant,
U.S. Army, Appellant.

No. 97–0045.
Crim.App. No. 9402101.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 16, 1997.

Decided March 13, 1998.

For Appellant: *Captain Stephen P. Bell,
Jr.* (argued); *Colonel John T. Phelps, II* and
*Lieutenant Colonel Michael L. Walters* (on
brief); *Captain Michael E. Hatch.*

For Appellee: *Major Lyle D. Jentzer* (argued); *Colonel Joseph E. Ross* and *Lieutenant Colonel Frederic L. Borch* (on brief).

*Opinion of the Court*

EFFRON, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of making a false official statement, larceny of military property, making false claims against the United States, and wrongfully wearing the Bronze Star, in violation of Articles 107, 121, 132, and 134, Uniform Code of Military Justice, 10 USC §§ 907, 921, 932, and 934, respectively. Appellant was sentenced to a dishonorable discharge, confinement for 7 years, total forfeitures, a fine of $2,266.00, and reduction to the lowest enlisted grade. The convening authority approved the findings and sentence as adjudged. The Court of Criminal Appeals affirmed.

On appellant's petition, we granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED AND ABUSED HIS DISCRETION BY ALLOWING AN IMPROPER

QUESTION, AFTER PROPER AND TIMELY OBJECTION BY DEFENSE COUNSEL, THAT ALLOWED LTC STOTT TO TESTIFY AS TO WHAT SOMEONE ELSE WOULD HAVE DONE (R. AT 731). MIL.R.EVID. 602, 403.

We hold that the military judge erred in admitting Lieutenant Colonel (LTC) Stott's testimony about what Colonel (COL) Hale would have done, but we affirm the decision below because we find that the error was not materially prejudicial to the substantial rights of appellant.

## I.  FACTS

During an investigation related to charges of which appellant ultimately was convicted, a search of his home revealed a Bronze Star medal and a certificate that purported to award appellant a Bronze Star for meritorious achievement from January 17 to April 1, 1991, during combat operations in Saudi Arabia and Iraq. The Government charged appellant with the unauthorized wearing of a Bronze Star, asserting that appellant had not been properly awarded the medal and that the certificate had been forged.

The Government produced the original permanent orders that list the Bronze Star recipients from appellant's command, the 82d Airborne Division, during the relevant time period. These orders were kept in the division files at Fort Bragg, North Carolina, and did not list appellant. The Government also presented evidence that, as a result of misconduct during the same time period covered by the award, appellant had received nonjudicial punishment on two occasions in 1991 for failing to obey a lawful order, dereliction of duty, and wrongfully going from his appointed place of duty. The Government contended that the nonjudicial punishment was relevant because it was unlikely that appellant would have been awarded a Bronze Star for meritorious service when he had received two Article 15s[1] during the same time period.

In its case-in-chief, the defense produced several witnesses who testified that they had

seen appellant openly wearing the Bronze Star. The defense argued that "[t]hese are not the acts of someone who thinks he's wearing an unauthorized award." The defense also presented testimony by Command Sergeant Major (CSM) Ford, the battalion sergeant major of the 82d Personnel Service Battalion at Fort Bragg in May of 1991. CSM Ford had experience processing awards and decorations and was familiar with the 82d Airborne Division's procedures for processing and verifying awards from Saudi Arabia. According to CSM Ford, the certificate found among appellant's belongings, which purported to award him a Bronze Star, appeared to be valid. CSM Ford also testified that the noncommissioned officer who handled the awards processing was not particularly competent, and there was "a great potential" for "confusion" in the awards processing following the Saudi campaign. The inference that defense counsel sought for the members to draw was that copies of appellant's orders did not appear in the proper files because they had been lost.

In rebuttal, the Government called LTC Stott, the G–1 for the 82d Airborne Division during the time appellant was stationed in Saudi Arabia. LTC Stott testified that the division had an awards policy that limited the number of Bronze Stars that could be awarded to 15% of any unit within a battalion, brigade or division. These numbers, according to LTC Stott, were rigidly enforced and reviewed at every level by each battalion and brigade commander and the G–1 and Chief of Staff of the division.

LTC Stott then testified that he knew COL Hale, appellant's brigade commander. He described COL Hale as a "[v]ery hard charging guy. One of the—if not the best brigade commander of the division, was expected to become a general officer." Trial counsel then asked LTC Stott:

Knowing what you know about [appellant's battalion commander], knowing what you know about COL Hale, having read the Article 15s and the certificate, do you think, in your opinion, knowing the awards policy of the division, that it is likely that

1.  UCMJ, 10 USC § 815.

COL Hale would have allowed that to go through?

LTC Stott replied, "Absolutely not." Defense counsel objected to the questioning on the grounds that LTC Stott's answer was "pure speculation" as to what COL Hale would say and that trial counsel had not laid a proper foundation by establishing LTC Stott's personal knowledge of the decision-making in this case.

## II.  DISCUSSION

■ The questions to LTC Stott about what COL Hale would have done were improper under the circumstances of this case. He was not shown to have had personal knowledge of the likelihood that COL Hale would have recommended a Bronze Star for meritorious achievement to a soldier who had been punished under Article 15 during the same time period. Mil.R.Evid. 602, Manual for Courts–Martial, United States (1995 ed.). Without a proper foundation as to the basis of LTC Stott's ability to gauge the likelihood that COL Hale would act in a certain way, the questioning improperly called for speculation on the part of the witness. *Cf. United States v. Frazier,* 33 MJ 260, 262 (CMA 1991); *United States v. McGill,* 15 MJ 242, 245 (CMA 1983); *United States v. Hernandez,* 693 F.2d 996, 1000 (10th Cir.1982), *cert. denied,* 459 U.S. 1222, 103 S.Ct. 1231, 75 L.Ed.2d 464 (1983).

■ We conclude, however, that appellant was not prejudiced by the error. Art. 59(a), UCMJ, 10 USC § 859(a). The Government produced the original permanent orders that listed the Bronze Star recipients and did not include appellant. The Government also presented several witnesses who testified about the proper procedures for the issuance of an award, the records that would be generated upon issuance, and where those records would be found in the ordinary course of business. According to these witnesses, no such records were found listing appellant as a Bronze Star recipient; the only record of appellant having received a Bronze Star was the certificate found among his personal effects and a duplicate copy found in his personnel file.

The Government's witnesses also testified that the certificates were not strictly controlled and could easily be forged, especially if the individual had experience with records, as did appellant. The Government also properly produced evidence of the two Article 15s that appellant had received in early 1991, and LTC Stott properly testified about the 15% quota limiting the number of Bronze Stars awarded in any unit. Given this overwhelming evidence, all of which was admissible, the admission of LTC Stott's opinion about the probability that the Colonel would act in a certain way was not so significant as to constitute prejudicial error.

## III.  CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and GIERKE concur.