**UNITED STATES, Appellee,**

v.

**Staff Sergeant Charles J. JACKSON, 422–92–6754, United States Army, Appellant.**

**ACMR 9002543.**

U.S. Army Court of Military Review.

28 Feb. 1992.

For Appellant: Captain Robin N. Swope, JAGC, Captain Alan M. Boyd, JAGC, Captain Michael W. Meier, JAGC (on brief).

---

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Samuel J. Smith, Jr., JAGC (on brief).

Before CREAN, WERNER and HAGAN, Appellate Military Judges.

### OPINION OF THE COURT

PER CURIAM:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of three specifications of wrongful possession and distribution of marijuana in the hashish form and one specification of conspiracy to distribute marijuana in the hashish form in violation of Articles 112a and 81, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 881 (1982 & Supp V 1987). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for fifteen years, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant asserts, among other errors, that he was denied the effective post-trial assistance of counsel in preparing a post-trial submission pursuant to Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1105 [hereinafter R.C.M.]. We agree.

In an affidavit submitted to this Court, the appellant claims that after trial his civilian trial defense counsel, Mr. F: (1) discussed clemency, but told the appellant that "since [he] had been convicted, there was not much else he could do for [him]"; (2) did not discuss the appellant's right to submit clemency matters; and (3) did not discuss the decision not to submit clemency matters on behalf of the appellant. Mr. F claims, also by affidavit, that: (1) the contract to represent the appellant at his court-martial did not include post-trial matters and that this was explained to and understood by the appellant; (2) the appellant read, understood, and signed his "Appellate Rights Advice" form; (3) the appellant was advised to immediately contact the trial defense service in Mannheim should he wish to submit post-trial matters; and (4) he received no word from the appellant

or the trial defense service that the appellant wished to submit clemency matters. In addition to these conflicting affidavits, this Court considered the record of trial and the allied papers.

The appellant was initially represented by Mr. F and his detailed military defense counsel, Captain (CPT) T. During a pre-trial session to schedule the case for trial, Mr. F stated that, "[w]e are prepared to go without TDS assistance, Your Honor." After tentatively scheduling a date on which CPT T would be on leave, the military judge conducted the following inquiry of the appellant and Mr. F:

MJ: [Mr. F], how does the 11th of September suit you?

IC: That will be fine, Your Honor.

MJ: Captain [T], is on leave. Sergeant Jackson, will you excuse Captain [T] from further participation at this trial if the trial proceeds on 11 September?

AC: Yes, Your Honor.

MJ: Do you excuse him, [Mr. F]?

IC: Yes, Your Honor.

MJ: So I will excuse you from further participation, with your blessings, Sergeant Jackson, as of the conclusion of this hearing this morning, is that right?

AC: I don't understand, sir.

MJ: When we stop the proceeding—the purpose of this trial is to set a trial date and learn about motions and all that. We've done that. With your concurrence, I will excuse Captain [T] from further participation when we finish this morning.

AC: Yes, Sir.

After the trial, on 12 September 1990, the appellant signed an "Appellate Rights Advice" form, with the assistance of Mr. F, which included the statement, "In exercising your post-trial and appellate rights, or before you decide to waive them, you have the right to the advice and assistance of military counsel provided free of charge or civilian counsel provided by you at no expense to the Government."

The next documented communication between the appellant and Mr. F is a letter to the appellant dated 24 October 1990, in

which Mr. F states, *inter alia*, that, "I am afraid that I must ask what arrangements have been made to pay my bill and what arrangements would be made for any further time I may spend on the case." After this, no evidence of any further communication between the appellant and Mr. F appears in the record of trial or the allied papers.

There is evidence of communication between Mr. F and the Office of the Staff Judge Advocate concerning the post-trial representation of the appellant. First is a Memorandum for Record (MFR) dated 2 November 1990, by Sergeant (SGT) L, a legal specialist handling post-trial matters in the Office of the Staff Judge Advocate, stating that she called Mr. F at his home and asked him if he would be representing the appellant for post-trial matters. Mr. F responded that he would. The MFR also indicates that, "[t]he record of trial was then served on [Mr. F] by express mail on 22 October 1990." Second is an undated document signed by Mr. F, entitled "Certificate of Service", indicating that he was served with a copy of the record of trial on 22 October 1990, and with a copy of the Staff Judge Advocate's Recommendation on 3 November 1990. This document also had an optional block in which inapplicable language could be lined through. By lining through the other language, Mr. F left the statement that, "I have not been in contact with the accused and do not know his intentions in submitting matters to the convening authority under R.C.M. 1105." Third is a second MFR by SGT L dated 15 November 1990, showing that the aforementioned "Certificate of Service" was received on 15 November 1990; that SGT L called Mr. F that same day for clarification; and that he replied that "no additional matters would be submitted in the case by [him F] on behalf of his client."

█ The thrust of the government argument is that Mr. F's contract with the appellant did not include post-trial matters, and this Court should not interfere in that contractual relationship. The appellant, however, urges us that Mr. F unilaterally terminated the contract, abandoned the ap-

pellant with respect to the submission of post-trial matters, and that this Court should find that Mr. F inadequately represented the appellant regarding post-trial clemency matters. We hold that the appellant was denied the effective assistance of counsel in preparing a post-trial submission to the convening authority.

In determining the adequacy of post-trial representation, we will apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and made applicable to military courts-martial by *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987). For the appellant to be successful in his assertion of inadequate post-trial representation, the appellant "must first show that his counsel's representation was deficient and then, that such deficiency worked to his detriment." *United States v. Harris*, 30 M.J. 580, 582 (A.C.M.R.1990).

█ It is well-settled "[t]hat a trial defense counsel's responsibilities do not cease at the end of a trial"; that "[a] trial defense counsel has responsibility to review a case after trial and to bring forth all legal issues and clemency matters which may assist his client"; and "that a soldier convicted by a court-martial must receive adequate and appropriate representation throughout the entire appellate process." *Harris*, 30 M.J. at 582 (citing *United States v. DeGrocco*, 23 M.J. 146, 148 n. 4 (C.M.A.1987) and *United States v. Davis*, 20 M.J. 1015 (A.C.M.R.1985) and *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977)). The unique clemency powers of the convening authority have long been noted and are an important part of the military criminal justice system. *See United States v. Stephenson*, 33 M.J. 79, 83 (C.M.A.1991); *United States v. Bono*, 26 M.J. 240, 243 n. 3 (C.M.A.1988); *United States v. Siders*, 15 M.J. 272 (C.M.A.1983); *United States v. Wilson*, 26 C.M.R. 3, 6 (1958). Therefore, soldiers convicted by court-martial are entitled to legal representation for post-trial matters.

The evidence in this case suggests a unilateral termination of the contract by Mr. F at some point between 2 November 1990

and 15 November 1990, due to a dispute over payment for services. The letter from Mr. F to the appellant dated 24 October 1990, indicates Mr. F's concern about payment for time spent and to be spent on the appellant's case. The 2 November 1990 MFR by SGT L shows Mr. F's intent to represent the appellant with regard to post-trial matters. But the 15 November 1990 MFR by SGT L shows that Mr. F no longer intended to submit post-trial matters on the appellant's behalf.

The Army Rules of Professional Conduct for Lawyers, which are based upon the American Bar Association (ABA) Rules of Professional Conduct, have addressed the issue of both mandatory and permissive terminations of the attorney-client relationship. *See* Army Reg. No. 27–10, Military Justice § 5–8 (22 December 1989); ABA Model Code of Professional Conduct 1 (1983); Dep't of Army, Pam 27–26, Rules of Professional Conduct for Lawyers (December 1987) [hereinafter Army Rules of Professional Conduct for Lawyers].[1] The Army Rules of Professional Conduct for Lawyers are binding on counsel practicing before Army courts and are incorporated by reference into Army Reg. No. 27–10, Military Justice § 5–8 (22 December 1989), thereby imbuing them with legal efficacy. *See* Gilligan & Lederer, Court–Martial Procedure, § 5–63.00 Withdrawal by the Defense Counsel 219 (1991).

Rule 1.16 of the Army Rules of Professional Conduct for Lawyers provides that:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall seek to withdraw from the representation of a client if:

(1) the representation will result in violation of these Rules of Professional Conduct or other law or regulation;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or

(3) the lawyer is dismissed by the client.

(b) Except as stated in paragraph (c), a lawyer may seek to withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(2) the client has used the lawyer's services to perpetrate a crime or fraud;

(3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will seek to withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists.

(c) When ordered to do so by a tribunal or other competent authority, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment or fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by law.

Army Rules of Professional Conduct for Lawyers, at 21.

If Mr. F wanted to terminate the attorney-client relationship because of a dispute over payment, he could have and should have sought permission from competent authority to do so by showing that the

---

**1.** For a discussion of the ethical rules applicable to other branches of the Armed Forces see Gilligan & Lederer, Court–Martial Procedure, § 5–52.00 Ethical Standards 189 (1991).

withdrawal could be accomplished without material adverse effect on the appellant (Rule 1.16(b)) or by showing the existence of one of the enumerated reasons for terminating an attorney-client relationship (Rule 1.16(b)(1)—(6)). Had permission been granted, Mr. F would still have been required to protect the appellant's interests as required by Rule 1.16(d), e.g., by giving reasonable notice or allowing time for the employment of other counsel.

In this case competent authority would have been either the convening authority or the military judge. *See* Army Rules of Professional Conduct for Lawyers, Comment, at 21. Mr. F had at least three opportunities to indicate affirmatively his desire to terminate representation to the convening authority. The first opportunity was during his 2 November 1990, conversation with SGT L. Instead, as indicated in SGT L's MFR, [Mr. F] stated his intent to continue representing the appellant. The second opportunity was on the undated document entitled "Certificate of Service", on which Mr. F could have indicated his desire to withdraw from the case rather than merely, "I have not been in contact with the accused and do not know his intentions in submitting matters to the convening authority under R.C.M. 1105." The third opportunity was during his 15 November 1990 conversation with SGT L during which he stated only that he would be submitting no additional matters on behalf of his client. Whatever the actual date the attorney-client relationship was terminated, all of Mr. F's actions indicate that, at least as of 2 November 1990, he was still representing the appellant.

■ This case is further complicated by the release of the military counsel appointed to represent the appellant. By releasing the appointed military counsel, Mr. F assumed sole responsibility for representing the appellant. The reason for the questions by the military judge, on the record, asking both Mr. F and the appellant whether they desired to excuse CPT T from further participation in the trial, is because releasing a detailed military counsel from representation is a matter of grave conse-

quence. A subsequent termination of the attorney-client relationship means that an accused is without representation until such time as a civilian attorney is retained or a substitute military counsel is appointed. R.C.M. 1106(f)(2). Hence, in a case where detailed military counsel has been released from representation, the remaining counsel has an even greater duty to protect his client's interests.

We cannot determine from the evidence before us the exact date that representation terminated, whether the appellant was notified of the termination, or what advice was given the appellant with respect to his need to submit post-trial matters on his own or obtain the services of another attorney to assist him. Mr. F, by affidavit, submits that the "Appellate Rights Advice" form which was signed by the appellant the last day of trial, 12 September 1990, is indicative of an awareness by the appellant of his right to submit post-trial matters. We do not find this document, which was executed before the date representation was terminated, to be dispositive of the issue.

■ Applying both prongs of *Strickland*, we find that Mr. F did not properly terminate his attorney-client relationship with the appellant and that the appellant was prejudiced with respect to the submission of post-trial matters. Military and civilian attorneys practicing before Army courts are expected to conform their practice to the Army Rules of Professional Conduct for Lawyers. Nevertheless, we are also mindful that termination of attorney-client relationships has not been an issue of great debate before military courts. Furthermore, where it was clear to Mr. F that he had an attorney-client relationship with the appellant, Mr. F represented his client with competence and zeal.

■ We also note that the Staff Judge Advocate could have acted to resolve this question of who was representing the appellant before submitting his post-trial recommendation to the Convening Authority. The post-trial communications between Mr. F and SGT L show that something was amiss in the appellant's attorney-client rela-

tionship with Mr. F. Upon receipt of the document entitled "Certificate of Service" on which Mr. F indicated that he had "not been in contact with the appellant and did not know his intentions in submitting matters to the convening authority under R.C.M. 1105", SGT L contacted Mr. F "for clarification." Mr. F then indicated to SGT L that no additional matters would be submitted *by him.* At this point, if not before, it should have been clear that the appellant was no longer being represented by Mr. F. Where there is a question whether a convicted soldier is represented by an attorney post-trial, staff judge advocates should not proceed with post-trial actions before that issue is properly and definitively resolved. *See United States v. Iverson,* 5 M.J. 440 (C.M.A.1978); R.C.M. 1105(f)(2).

We need not discuss the other issues raised by the appellant until the appellant has had an opportunity to present post-trial matters to a convening authority, with the assistance of counsel if he so desires, and until a convening authority has the opportunity to determine whether to approve or disapprove the findings of guilty or the sentence based on any post-trial matters that the appellant may present.

The action of the convening authority, dated 30 November 1990, is set aside. The record of trial will be returned to The Judge Advocate General for return to the same or a different convening authority for a new recommendation and action.