**UNITED STATES, Appellee,**

v.

**Sergeant Alexander J. ESTRELLA, 262–45–9275, United States Army, Appellant.**

**ACMR 9101626.**

U.S. Army Court of Military Review.

16 Oct. 1992.

For Appellant: Captain Clement B. Lewis III (argued); Major James M. Heaton, JAGC, Captain Emmett G. Wells, JAGC, Captain Michael E. Smith, JAGC (on brief).

For Appellee: Captain Jane F. Polcen, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Joseph C. Swetnam, JAGC, Major Edith M. Rob, JAGC (on brief).

Before CREAN, JOHNSTON, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

The appellant was found guilty, by a military judge sitting as a general court-martial, on mixed pleas, of disobedience of an order (six specifications), aggravated assault, and adultery, in violation of Articles 92, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 928, and 934 (1982) [hereinafter UCMJ]. The convening

authority approved the adjudged sentence of a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to Private E1. The military judge recommended that the convening authority suspend execution of the forfeiture portion of the sentence if the appellant made allotments to pay a phone bill and also to provide for the support of his wife and child.

The appellant's battalion commander, Lieutenant Colonel (LTC) Thomas, held numerous battalion formations, which the appellant attended, before the battalion deployed to Saudi Arabia on Operation Desert Shield/Storm and also after the battalion arrived in country. During these formations, LTC Thomas ordered that no information as to location, activities, mission, training, or any other thing that would provide any enemy of the United States specific information as to what the soldiers were doing, was to be mentioned in letters or conversations to people back home. Lieutenant Colonel Thomas encouraged his soldiers to write home but not to provide specific information beyond the generalities, such as, the unit was in Saudi Arabia and firing their weapons. The appellant acknowledged knowing of this order.

While in Saudi Arabia, the appellant answered a "to any soldier" letter from a Ms. P. After the initial exchange of letters, the appellant and Ms. P started an extensive exchange of letters and became romantically involved. In two letters, the appellant drew a crude map of the Saudi Arabia/Iraq/Kuwait area and put a dot along the border of these countries with an arrow and notation that he was 45 miles from the border. In three letters, he stated he was two miles from the Iraq border. In another letter, he wrote that the advance into Iraq was pushed back until the 20th or 21st of February. The appellant testified that he obtained the information as to his unit location from the BBC, CNN, newspapers and magazines.

When the appellant returned from Operation Desert Storm, he visited Ms. P and they engaged in sexual intercourse. At the time, the appellant was married to, but being divorced from, his wife. Even with his prodigious letter writing, the appellant failed to mention this fact. Ms. P only learned of the appellant's marital status when his wife called Ms. P.

In Saudi Arabia, the appellant decided to counsel behind a sand dune Private First Class (PFC) M, a former member of his section, for not showing the proper respect to the unit noncommissioned officers (NCO). Private First Class M testified that he knew that since they were going behind the sand dune, the appellant wanted to fight, but he did not want to fight. As he and the appellant went behind the sand dune, the appellant told him to take off his equipment. Private First Class M did so except for a survival knife strapped to his hip. As he was untying the knife, the appellant jumped him. As they were wrestling and struggling on the ground, with PFC M getting the better of the appellant, the appellant pulled PFC M's knife and placed it against the back of PFC M's neck in the area of the spinal column. The appellant told PFC M that he would kill him if he did not let go. Private First Class M let go and both soldiers got to their feet and the appellant threw the knife to the side. Private First Class M then testified that the appellant attacked him again, but he was able to get the best of the appellant again. The appellant then ended the fight and they walked back to the unit area.

The appellant testified substantially as did PFC M concerning the facts surrounding the fight. However, the appellant testified he was going to counsel PFC M in a place that would not be embarrassing to PFC M so they went behind the sand dune. It was PFC M who attacked the appellant and the appellant took the knife and threw it away so PFC M could not use it against the appellant. He also testified that he did not place the knife on the neck of PFC M.

The appellant asserts as error that the evidence is not legally and factually sufficient for the findings of guilty of the disobedience of the orders. He further asserts that the military judge erred when he permitted testimony in aggravation from

Ms. P that she was a virgin prior to engaging in sexual intercourse with the appellant. He also asserts that the military judge impeached the forfeiture portion of his sentence by conditioning a recommendation for suspension of the forfeiture on the appellant opening an allotment. He further contends that the staff judge advocate committed "plain error" when he advised the convening authority in the addendum to his post-trial recommendation [1] that there was no feasible way to ensure the appellant complied with the provision to open an allotment. We disagree on all the assignments of error and affirm.

### I. Sufficiency of the Evidence

■ The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Blocker,* 32 M.J. 281, 284 (C.M.A.1991). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witness, this Court is itself convinced of appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

■ The government must prove for the offense of failure to obey an order that a certain lawful order was issued, that the accused had knowledge of that order and a duty to obey, and that he failed to obey the order. The order of LTC Thomas was not to provide the people back home certain information as to location, training, mission, etc. The order not to reveal such information has a valid military purpose. It is similar to the old adage, "Loose lips, sink ships." In time of war, small bits of information collected from various sources can, when pieced together by an enemy's intelligence service, reveal the identity, size, capabilities, and intentions of an Army

unit. So, the order not to reveal any information of a specific nature such as location, mission, and training, has a strong and valid basis. The order furthers the military objective of not providing information that may potentially help the enemy, it is not excessively broad or arbitrary and capricious and does not abridge a personal right of the soldier in that it did not prohibit the soldier from writing home, but only not to provide certain types of information. *United States v. Green,* 22 M.J. 711, 716 (A.C.M.R.1986). Accordingly, we find that LTC Thomas' order was lawful and that the appellant violated that order when he wrote Ms. P of his location near the border, and when he revealed the change in the date for the push into Iraq.

### II. Evidence in Aggravation

■ The military judge permitted the trial counsel, during the sentencing portion of the trial, to elicit from Ms. P that she lost her virginity to the appellant. The trial counsel may introduce evidence during the presentencing phase of the trial as to the aggravating circumstances directly relating to or resulting from the offense. R.C.M. 1001(b)(4). Such evidence must not be unduly inflammatory and its probative value must outweigh any prejudicial impact. Manual for Courts–Martial, United States, 1984, Military Rules of Evidence 403. The sentencing authority can consider such evidence to understand the full measure of the loss suffered by the victims to include family members and the community. *United States v. Fontenot,* 29 M.J. 244, 251 (C.M.A.1989); *United States v. Pearson,* 17 M.J. 149, 153 (C.M.A.1984).

The Court of Military Appeals recently held that a father's testimony concerning his family's frantic search for their daughter and the family's distress caused by her actions was admissible evidence during the sentencing portion of the trial. *United States v. Wilson,* No. 67176/AR, slip op. at 4 (C.M.A. 30 Sep. 1992). In that case, the witness' daughter and another female

---

**1.** Manual for Courts–Martial, United States, 1984 [hereinafter MCM], Rule for Courts–Martial 1106 [hereinafter R.C.M.]

friend, both under the age of sixteen, had voluntarily engaged in sexual intercourse in the same room with the accused, Sergeant Wilson, and another sergeant. The daughter of the witness did not engage in sexual activities with Wilson but with the other soldier. Judge Cox, in citing the language of Chief Justice Rehnquist who wrote that " 'the assessment of harm caused by' criminal conduct is 'an important concern in the criminal law, both' to determine 'the elements of the offense and ... the appropriate punishment' as well as to further the exercise of sentencing discretion," *Payne v. Tennessee*, ——— U.S. ———, ———, 111 S.Ct. 2597, 2605, 115 L.Ed.2d 720 held that testimony of the impact on this girl's family "satisfies the requirement of R.C.M. 101(b)(4) whether the girl (D) 'qualifies' as a victim." *Wilson*, slip. op. at 4.

We find that the testimony of Ms. P concerning the loss of her virginity to the appellant when he committed adultery has a more direct impact on Ms. P than the father's testimony of the impact on the girl's family in *Wilson*. Accordingly, we hold that the military judge did not abuse his discretion in permitting Ms. P to testify as to the circumstances of the loss of her virginity. Even if it was error for the military judge to permit the trial counsel to present this evidence as an aggravating factor to the adultery for which the appellant pled guilty, we find that the error was harmless since the loss of virginity by a willing and consenting adult would have little impact on a military judge as the sentencing authority.

### III. Military Judge Clemency Recommendation

 During the sentencing phase of the trial, the appellant acknowledged that he wanted to reimburse Ms. P's family for the collect calls he had made to them from Saudi Arabia and for which he had promised to pay. His wife also testified that she still loved her husband and needed him to support her and their baby. The appellant informed the military judge that he wanted

to continue to support his family. The military judge recommended that the convening authority suspend the forfeiture portion of the sentence if the appellant initiated an allotment to provide for the support of his family and to pay back Ms. P's family.

The suspension of forfeitures in lieu of an allotment is a clemency matter within the discretion of the convening authority. *United States v. Cowan*, 34 M.J. 258, 259 (C.M.A.1992). The conditions for suspension of the forfeiture cannot increase the severity of the sentence, violate public policy, regulations, or provisions of the Manual for Courts–Martial. *Cowan*, 34 M.J. at 260. The military judge's recommendation was merely an attempt on his part to permit the appellant to satisfy both of his desires to support his family and repay the P family. He did not impeach his sentence since it was clearly appropriate as announced, was not contingent on the clemency recommendation, and did not misapply the sentencing law. *See United States v. McLaurin*, 9 M.J. 855, 859 (A.F.C.M.R. 1980), *pet. denied*, 10 M.J. 113 (C.M.A. 1980); *United States v. Miller*, 18 M.J. 599 (N.M.C.M.R.1984).

The staff judge advocate in his recommendation to the convening authority, R.C.M. 1106, initially recommended that the convening authority grant the clemency recommended by the military judge. However, the trial defense counsel, in her answer to the recommendation of the staff judge advocate, correctly noted that a soldier cannot start an allotment once ordered to be court-martialed.[2] The staff judge advocate then changed his recommendation because he did not know of a feasible way to assure that the appellant complied by starting an allotment. The staff judge advocate merely changed his recommendation on suspension of the forfeiture because of the correct advice of the trial defense counsel and that he did not see a means to assure compliance. The convening authority still had discretion to suspend the forfei-

---

**2.** *See* Department of Defense, Military Pay and Allowances–Entitlements Manual, para.

60108e(1) (9 March 1987).

tures. Accordingly, we hold that the staff judge advocate did not err in his advice to the convening authority.

■ The appellant personally asserts, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), that the evidence is not legally and factually sufficient to sustain the findings of guilty of aggravated assault on PFC M. We have carefully considered the evidence as to this offense and find that the evidence is both legally and factually sufficient and the assertion is without merit.

The findings of guilty and the sentence are affirmed.

Judge JOHNSTON and Judge GONZALES concur.