UNITED STATES, Appellee,

v.

Staff Sergeant Larry D. YOUNG, United States Army, Appellant.

ARMY 9501208.

U.S. Army Court of Criminal Appeals.

21 April 1999.

For Appellant: Richard T. McNeil (argued); Colonel Stephen D. Smith, JA; Captain Matthew A. Myers, Sr., JA (on brief); Mary Ramsay McCormick (on brief); Major Leslie A. Nepper, JA; Captain Angelines McCaffrey, JA.

For Appellee: Major Patricia A. Ham, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Major Virginia G. Beakes, JA (on brief); Lieutenant Colonel Eugene R. Milhizer, JA; Captain Daniel G. Brookhart, JA (on brief); Colonel Russell S. Estey, JA.

Before JOHNSTON, Senior Judge, SQUIRES and ECKER, Appellate Military Judges.

## OPINION OF THE COURT

SQUIRES, Judge:

Contrary to his pleas, appellant was convicted by a panel composed of officer and enlisted members of willfully disobeying a superior commissioned officer (two specifications), rape (five specifications), assault consummated by battery (two specifications), and adultery (five specifications) in violation of Articles 90, 120, 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 920, 928 and 934 [hereinafter UCMJ]. The adjudged and approved sentence includes confinement for life, a dishonorable discharge, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

On appeal, appellant contends that: (1) the military judge abused his discretion by failing to grant a continuance to allow Staff

Sergeant (SSG) Young to retain civilian counsel of choice; (2) he was ineffectively represented at trial because his civilian counsel, Mr. Joel Cohen, abandoned the case after a conflict of interest arose; (3) the evidence is insufficient to prove lack of consent, and thus the multiple rapes; (4) appellant's pretrial restriction for 121 days denied him a speedy trial; (5) trial counsel's sentencing argument impermissibly requested punishment for misconduct that occurred beyond the statute of limitations; (6) the sentence to confinement for life is inappropriately severe; (7) appellant was wrongfully convicted of both rape and adultery; (8) the military judge erred when he failed to suppress appellant's pretrial statement; (9) the military judge's instruction concerning "constructive force" based on a parental relationship was erroneous; and (10) the military judge erred in admitting testimony under the medical diagnosis and treatment exception to the hearsay rule.

Pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), appellant raises many of the errors assigned by his appellate counsel. Additionally, he argues he was denied effective assistance of counsel in the pretrial phase of his court-martial proceedings, as well as at trial. He also contends that the military judge should have granted a mistrial after the members heard impermissible evidence; trial counsel engaged in ex parte communications with the members; trial counsel's sentencing argument was improper; photographs of the victim were improperly admitted; the military judge was not an active member of his state bar organization; and cumulative errors denied him a fair trial.

### FACTS

The majority of the offenses for which appellant was convicted arose from his sexually abusing his stepdaughter from June 1990 until June 1994. The victim, C, born in February 1974, was sixteen years of age when the rapes for which appellant was convicted began. However, C testified that her stepfather's sexual abuse took place over a fifteen-year period beginning when C was five years old. By the time C reached eleven years of age, appellant's abuse had progressed to sexual intercourse. Appellant continued to have sexual intercourse with C on a frequent basis until she was twenty years old and reported the crime.

On 21 June 1994, appellant was questioned by Special Agent (SA) Cristobal Hernandez, of the United States Army Criminal Investigation Command. During this questioning, appellant admitted that he had a sexual relationship with his stepdaughter, C. Specifically, appellant admitted that when C was about thirteen to fourteen years old she would "play" with his crotch and penis area. He stated this conduct went on for about a year to a year and a half. Appellant acknowledged that when C turned fourteen, he had sexual intercourse with her. Then, after appellant returned from a tour in Korea, he again had sexual intercourse with C. At this time C was fifteen to sixteen years old. Appellant stated that the last time he had engaged C in sexual intercourse was six or seven months before making the admissions to SA Hernandez.

That same month, SSG Young retained the services of Mr. Cohen, an experienced, Frankfurt, Germany-based civilian defense counsel. Military defense counsel also became involved in appellant's representation at about the same time.

Additional facts necessary to the disposition of this case are set out below.

### I. Failure to Grant Continuance for Substitute Counsel

On 16 March 1995, charges were preferred against appellant. On 27 March 1995, an Article 32, UCMJ, investigation was held. Both Mr. Cohen and detailed military defense counsel, Captain (CPT) Boyd, represented SSG Young. Charges were referred to trial on 1 May 1995. The court-martial was scheduled for trial in Germany on 8 May. Mr. Cohen filed his notice of appearance on 7 May, contingent upon the court granting a continuance until 21 June 1995. The continuance was granted. On 17 June 1995, Mr. William Lumpkin, a civilian defense attorney residing in the United States, called Mr. Cohen. Mr. Lumpkin notified Mr. Cohen that he (Lumpkin) had consulted with appellant. That same day, Mr. Cohen notified trial counsel that he might seek to withdraw

as counsel because SSG Young wished to hire different civilian counsel.

Two days later, Mr. Cohen asked the military judge for an immediate Article 39(a), UCMJ session so that he could withdraw as counsel and request a continuance to allow SSG Young additional time to retain Mr. Lumpkin. To accommodate the military judge's trial schedule, Mr. Cohen's motions to withdraw and for a continuance were heard on 21 June, the previously scheduled court-martial date. The military judge denied the requests.

■ The decision on a motion for a continuance is reserved to the sound discretion of the trial judge and will not be overturned on appeal absent an abuse of that discretion, even where failure to grant the continuance denies an accused the right to civilian counsel of choice. *United States v. Miller*, 47 M.J. 352, 358 (1997) (citing *United States v. Thomas*, 22 M.J. 57, 59 (C.M.A.1986)); *United States v. Sharp*, 38 M.J. 33, 37 (C.M.A. 1993); *see United States v. Powell*, 49 M.J. 220, 224 (1998); *United States v. Weisbeck*, 48 M.J. 570, 575 (Army Ct.Crim.App.1998). "An 'abuse of discretion' exists where 'reasons or rulings of the' military judge are 'clearly untenable and deprive a party of a substantial right such as to amount to a denial of justice'; it 'does not imply an improper motive, willful purpose, or intentional wrong.'" *Miller*, 47 M.J. at 358 (citing *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)); *see generally United States v. Mosley*, 42 M.J. 300, 303 (1995).

■ "[T]he right to counsel of choice is not absolute." *Thomas*, 22 M.J. 57, 59 (C.M.A. 1986) (citing *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)); *United States v. Kelley*, 40 M.J. 515, 516 (A.C.M.R.1994) (citing *United States v. Redding*, 11 M.J. 100 (C.M.A.1981)); *United States v. Greenwald*, 37 M.J. 537, 539 (A.C.M.R.1993) (citing *United States v. Ettleson*, 13 M.J. 348, 354 (C.M.A.1982)); *United States v. Davis*, 36 M.J. 702, 706 (A.C.M.R. 1992); *United States v. Gipson*, 25 M.J. 781, 783 (A.C.M.R.1988); *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir.1990).

■ "A military judge should grant a continuance in order to allow an accused a reasonable opportunity to obtain civilian counsel for the proceeding." *Miller*, 47 M.J. at 358 (citing *Thomas*, 22 M.J. at 59). "Although the right to civilian counsel 'is not absolute, an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel.'" *Id.* (quoting *Thomas*, 22 M.J. at 59). "It ought to be an extremely unusual case when a man is forced to forgo civilian counsel and go to trial with assigned military counsel rejected by him." *Id.* (quoting *United States v. Kinard*, 21 U.S.C.M.A. 300, 303, 45 C.M.R. 74, 77, 1972 WL 14127 (1972)). The controlling factor is whether the accused was accorded the opportunity to secure counsel of his choice. *Id.* (quoting *Kinard*, 45 C.M.R. at 78).

■ When deciding whether or not to grant a continuance, a military judge must balance the accused's right to civilian counsel of choice and the government's interest in the prompt, fair administration of justice. *See Sharp*, 38 M.J. at 38; *Thomas*, 22 M.J. at 59 (citing *Morris*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610; *United States v. Montoya*, 13 M.J. 268, 274 (C.M.A.1982)).

■ "The factors used to determine whether a military judge abused his or her discretion by denying a continuance include 'surprise, nature of any evidence involved, timeliness of the request, substitute testimony or evidence, availability of witness or evidence requested, length of continuance, prejudice to opponent, moving party received prior continuances, good faith of moving party, use of reasonable diligence by moving party, possible impact on verdict, and prior notice.'" *Miller*, 47 M.J. at 358 (quoting Francis A. Gilligan & Frederic I. Lederer, *Court–Martial Procedure* § 18–32.00 at 704 (1991)); *see also Thomas*, 22 M.J. at 59; *Iles*, 906 F.2d at 1130, n. 8. (appellate courts will among other things, look to "the adequacy of the trial court's inquiry into the defendant's complaint; and whether the conflict ... was so great" as to preclude an adequate defense).

■ The propriety of granting a continuance is always fact-specific and must be decided in light of the peculiar circumstances surrounding each case and the reasons presented to the trial court. *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). Appellant's reason at trial for seeking a continuance was to allow him to *attempt* to retain a United States-based civilian defense counsel because of a lack of "trust" and "communication" between him and his counsel (both civilian and military). When the issue is *substitute counsel of choice* as opposed to *initial counsel of choice*, a majority of our superior court believes that the key is whether a *breakdown of the attorney-client relationship is complete or the conflict is irreconcilable*. *United States v. Lindsey*, 48 M.J. 93, 94, 99 (1998) (two judge plurality and two judges concurring in the result) (both opinions citing *United States v. Swinney*, 970 F.2d 494, 499–500 (8th Cir.1992)) (emphasis added). Differences of opinion on trial tactics and strategy, and the frustration this might engender, do not equate to irreconcilable conflict or a breakdown in communication. *Id.* at 98 (citing *Swinney*, 970 F.2d at 499).

We conclude that the military judge did not abuse his discretion in finding no complete breakdown or irreconcilable conflict necessitating a continuance in appellant's court-martial. Mr. Cohen had previously investigated this case, was prepared for trial, and knew what needed to be done to effectively represent appellant. *See Davis*, 36 M.J. at 707. The continuance was not requested for the purpose of familiarizing himself with facts and witnesses, but solely for the contingent purpose of buying time for appellant to attempt to secure the services of Mr. Lumpkin.[1] *See Id.* Further, it is well within a military judge's discretion, and in fact his responsibility, to balance the interests of the government, which had brought witnesses from the United States to the site of the trial, with appellant's eleventh-hour wish for a second continuance to obtain a third attorney. *Id.*

We find that appellant had received a prior continuance; both civilian and military counsel had been present at the Article 32 investigation; appellant himself created the desire for a delay; a further delay could have caused witnesses to become unavailable (including the key witness); there was no specific time offered at which Mr. Lumpkin would be available for trial; Mr. Lumpkin did not make a written appearance; appellant was represented by both civilian and military counsel; a continuance may well have been devastating to the victim and thereby the government's case;[2] the government had flown eight witnesses to Germany for the trial at great expense; the defense team was ready for trial; and Mr. Lumpkin had neither been retained nor was he present.

> In its haste to create a novel Sixth Amendment right, the court wholly failed to take into account the interest of the victim.... But in the administration of criminal justice, courts may not ignore the concerns of victims. Apart from all other factors, such a course would hardly encourage victims to report violations to the proper authorities; this is especially so when the crime is one calling for public testimony about a humiliating and degrading experience such as was involved here. [T]he ordeal of reliving such an experience ... is not to be ignored by the courts[, nor are] the burdens on the system in terms of witnesses, records, and fading memories, to say nothing of misusing judicial resources.
>
> *Morris*, 461 U.S. at 13–15, 103 S.Ct. 1610 (citations omitted).

---

1. Mr. Lumpkin was not retained and never made an appearance. The best proffer Mr. Cohen could make was that, *as he understood it*, Mr. Lumpkin *would commit himself after he received the retainer.*

2. In ruling that a continuance to obtain counsel of choice was properly denied, the Supreme Court stated:

   The Court of Appeals' conclusion that the Sixth Amendment right to counsel "would be without substance if it did not include the right to a *meaningful attorney-client relationship,*" [ ] is without basis in the law. No authority was cited for this novel ingredient of the Sixth Amendment guarantee of counsel, and of course none could be. No court could possibly guarantee that a defendant will develop the kind of rapport with his attorney—privately retained or provided by the public—that the Court of Appeals thought part of the Sixth Amendment guarantee of counsel....

   ....

■ Moreover, we find that the defense team was able to communicate. A mere lack of trust or confidence in one's attorney is not tantamount to finding a total lack of communication preventing an adequate defense. *United States v. Allen*, 789 F.2d 90, 93 (1st Cir.1986), *cert. denied*, 479 U.S. 846, 107 S.Ct. 164, 93 L.Ed.2d 103 (1986); *Davis*, 36 M.J. 702.

Appellant's complaint, that his relationship with Mr. Cohen and military defense counsel had collapsed, must be examined to determine the degree any conflict resulted in a lack of communication. *See United States v. Gallop*, 838 F.2d 105 (4th Cir.), *cert. denied*, 487 U.S. 1211, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). Early in the proceedings when counsel learned that the military judge would not continue the case, Mr. Cohen moved to suppress a previous statement by the appellant. After evidence was heard on the motion, counsel conferred with appellant and then represented to the court that both members of the defense team had spoken with appellant and, that appellant had made the decision not to testify on the motion. Defense counsel's cross-examination of the victim indicates that appellant was communicating with counsel to provide him with specific information not otherwise adduced at trial.

Defense counsel similarly communicated with the accused after the government had presented its case-in-chief and rested. At this point, defense counsel explained to the military judge on the record that counsel had discussed appellant's choices with respect to presenting evidence on the merits and that appellant "had accepted [their] advice on the matter." Not only could appellant communicate with counsel, he accepted their advice.

Finally, appellant had more than adequate opportunity to communicate with his counsel about his defense prior to the asserted erosion of trust. Appellant retained civilian counsel in June 1994, approximately one year prior to trial. During the same time, the military defense counsel also became involved in the case. Although civilian counsel claimed that communication as to specifics of the case was not possible until charges were preferred in March 1995, even this date was three months before trial.

■ On this record, it is clear that until two weeks before trial, appellant and his counsel were experiencing no communication or trust problems. For some reason, SSG Young had a change of heart on the eve of his court-martial. An accused who decides to switch counsel at the eleventh hour may properly be denied a continuance if the delay is unreasonable. *Montoya*, 13 M.J. at 274; *United States v. Jordan*, 22 U.S.C.M.A. 164, 167, 46 C.M.R. 164, 167, 1973 WL 14472 (1973) (citing *United States v. Vanderpool*, 4 U.S.C.M.A. 561, 16 C.M.R. 135, 1954 WL 2434 (1954)); *United States v. Bowie*, 17 M.J. 821 (A.C.M.R.1984). Under the circumstances enumerated above, we find that appellant's request for an open-ended delay was unreasonable. The military judge did not abuse his discretion in denying the continuance.

## II. Effective Assistance of Counsel

■ Whether appellant was denied his constitutional right to effective assistance of conflict-free counsel is a mixed question of law and fact that requires our de novo review. *United States v. Calhoun*, 49 M.J. 485, 489 (1998); *United States v. Smith*, 44 M.J. 459, 460 (1996) (citing *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

### A. *Strickland* Test

■ Citizens and soldiers enjoy the Sixth Amendment right to counsel in order to ensure that trials are fair. *Strickland*, 466 U.S. at 684, 104 S.Ct. 2052 (citing *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932)); *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (citing *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)), *remanded*, *Fretwell v. Norris*, 521 U.S. 1115, 117 S.Ct. 2504, 138 L.Ed.2d 1008 (1997), *habeas corpus denied*, *remanded*, 133 F.3d 621, *reh'g en banc*, *denied*, No. 96–2806EAPB, 1998 U.S.App. LEXIS 4514, at *1 (8th Cir. Mar. 5), *cert. denied*, —— U.S. ——, 119 S.Ct. 115, 142 L.Ed.2d 92 (1998). The Constitution entitles an accused to a fair trial, not a perfect one. *See Delaware v. Van*

*Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (citing *United States v. Hasting,* 461 U.S. 499, 508–509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)). The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. *Lockhart,* 506 U.S. at 369, 113 S.Ct. 838 (citing *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). Thus, absent some effect on the reliability of the trial process, the guarantee is generally not breached. *Id.* at 369, 106 S.Ct. 2574 (citing *Cronic,* 466 U.S. at 658, 104 S.Ct. 2039).

▮▮▮▮ "Counsel is presumed competent until proven otherwise." *United States v. Gibson,* 46 M.J. 77, 78 (1997) (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052); *Calhoun,* 49 M.J. at 489. "Appellant bears the burden of proving ineffective assistance of counsel." *Gibson,* 46 M.J. at 78. "In order to prevail on a claim of ineffective assistance of counsel, appellant must present evidence [3] that [ ] counsel's performance was deficient [and] demonstrate that this deficient performance resulted in prejudice." *Id.* (citations omitted); *United States v. Moulton,* 47 M.J. 227, 229 (1997). The deficiency prong, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Gibson,* 46 M.J. at 78; *United States v. Clark,* 49 M.J. 98, 100 (1998). The prejudice prong, "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Gibson,* 46 M.J. at 78; *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. If an appellant does not meet the deficiency prong of the *Strickland* test, this court need not address any claim of prejudice. *Gibson,* 46 M.J. at 78.

▮▮▮ In conducting appellate review of an ineffectiveness claim, appellate courts will not second-guess tactical decisions made at trial by the defense counsel. *United States v. Morgan,* 37 M.J. 407, 410 (C.M.A.1993)

(citing *United States v. Rivas,* 3 M.J. 282, 289 (C.M.A.1977)); *United States v. Walters,* 42 M.J. 760, 763 (Army Ct.Crim.App.1995). Rather, an appellate court gives deference to counsel's tactical judgment and does not substitute its view with the benefit of hindsight. *United States v. Marshall,* 45 M.J. 268, 270 (1996); *see also United States v. Sanders,* 37 M.J. 116, 118 (C.M.A.1993) (Monday-morning quarterbacking rejected).

## B. Effective Assistance of Conflict-free Counsel

▮▮▮ Appellant argues that Mr. Cohen informed the military judge that appellant believed that the defense team could not be effective. This information, according to appellant, raised the issue of a conflict of interest. The right to effective assistance of "counsel means the right to 'effective assistance of conflict-free counsel.'" *United States v. Cornett,* 47 M.J. 128, 133 (1997); *United States v. Carter,* 40 M.J. 102, 105 (C.M.A.1994) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). Allegations of ineffectiveness create a *potential* conflict. *Carter,* 40 M.J. at 105. When a lawyer believes he cannot competently represent a client, he should move to withdraw. *Davis,* 36 M.J. at 706 (citing *United States v. Jackson,* 34 M.J. 783, 786 (A.C.M.R.1992)).

▮▮▮ However, even when allegations of ineffectiveness are leveled, there must be a showing of *actual* conflict that prevents the counsel from effectively representing the client. *Id.* (emphasis added) (citing *United States v. Uptain,* 531 F.2d 1281 (5th Cir. 1976)); *see also Burger v. Kemp,* 483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638 (U.S.Ga.1986). Even when an actual conflict exists and counsel moves to withdraw, courts must consider the timeliness of the request, the quality of the conflict, and whether the conflict has resulted in a *total lack of communication preventing an adequate defense.* *Davis,* 36 M.J. at 706 (emphasis added) (citing *Iles,* 906 F.2d 1122).

---

**3.** An appellant must present more than a prima facie case to meet his very heavy burden. *United States v. Crum,* 38 M.J. 663, 666, n. 3 (A.C.M.R. 1993), *aff'd,* 43 M.J. 230 (1995); *United States v. Walters,* 42 M.J. 760, 763 (Army Ct.Crim.App. 1995).

Appellant mischaracterizes Mr. Cohen's assertions and the record as a whole. Mr. Cohen moved to withdraw based essentially on the argument that appellant had gotten a second opinion which differed from his own, appellant liked the second opinion better and wanted to retain the second attorney, and that after appellant received the second opinion appellant became very difficult to control. At no point did Mr. Cohen "inform[ ] the military judge that appellant believed he and Captain Boyd had been ineffective." Supplemental Assignment of Errors and Brief on Behalf of Accused at 7. Mr. Cohen argued attorney of choice and lack of client control for ten pages of the record, and then added, "Obviously, if the military judge indicates that I am going to have to remain on the case I will do it. However, I think that what we're doing then is we're setting up the ineffective assistance of counsel." (R. at 14).

Appellant's personal representations are in accord. Appellant complained about his defense team's attitude, and ability to work with them. He said it was just a matter of trust, and that he believed Mr. Lumpkin could do a *better* job. Appellant never claimed that his defense team's performance was unprofessionally deficient. As these representations of appellant and Mr. Cohen indicate, the issue was attorney choice and client control, not allegations of ineffectiveness. Therefore, even a *potential* conflict was never raised.[4]

## C. The Effectiveness of Counsel's Assistance

During oral argument appellate defense counsel asserted that trial defense counsel were ineffective because they did not make an opening statement; presented only oral motions for relief, rather than written ones;

made no attempt to present child sexual abuse accommodation syndrome evidence; and presented no defense evidence on the merits. We disagree. The record demonstrates effective cross-examination, extensive voir dire, and a reasonable closing argument on the merits, all of which meet the *Strickland* standard. The defense advanced a theory that the victim consented. In support of their theory, they demonstrated, through cross-examination, the victim's age and independence, and her knowledge that the rape could be stopped by telling her mother or by declining to move to Germany.

Appellant's complaint that neither defense counsel made an opening statement nor presented any evidence is without merit. Trial defense counsel reserved opening statement until after the government presented its case. After discussion with his counsel, appellant elected to present no evidence on the merits. Thus, there was no reason to make an opening statement.

Appellant's argument that Mr. Cohen did not wish to make a closing argument is equally nonmeritorious. After appellant had absented himself without leave, prior to instructions and closing arguments, Mr. Cohen, with stated reason, informed the military judge that he would present no closing argument. The military judge disagreed with Mr. Cohen's logic and ordered him to make a closing argument, which he did.

■■■ Finally, we disagree with appellant's assertion that Mr. Cohen's efforts to categorize appellant's sexual relationship with C as consensual were inadequate. Mr. Cohen elicited testimony from the victim that she had made a prior complaint to her mother, who believed and supported her, and that the abuse stopped. He then obtained C's admis-

---

4. Appellant's reliance on *United States v. Smith*, 36 M.J. 455, 457 (C.M.A.1993), aff'd on remand, 39 M.J. 587 (A.F.C.M.R.), aff'd, 44 M.J. 459 (1996), is misplaced. *Smith* involved multiple representation. Even actual allegations of ineffectiveness that ripen into concrete conflicts do not always affect performance. *Id.*, (citing *Mathis v. Hood*, 937 F.2d 790 (2d Cir.1991)). In this case, as already established, there is no evidence of record alleging ineffectiveness. Further: 1) there is no evidence of multiple representation; 2) there is no evidence of conflicting interests; and 3) there is no evidence that counsel's perfor-

mance was adversely affected by the alleged deterioration of trust. *Id.; see also United States v. Babbitt*, 26 M.J. 157, 159 (C.M.A.1988) (appellant carries the burden of establishing that conflicting interests existed, that counsel actively represented these conflicting interests, and that an actual conflict of interest adversely affected the lawyer's performance; absent such a showing appellant must carry the normal burden of showing "a serious incompetency which 'falls measurably below the performance ... of fallible lawyers' ") (citing *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052).

sion that she believed her mother would have still supported her and stopped the abuse; but C, now two years older, of the age of consent, and otherwise sexually active, never went to her mother. He then tied the testimony together in his closing argument. Appellant offered no suggestions of any other questioning which Mr. Cohen should have undertaken. We too are unable to find a deficiency.

### III. Sufficiency of the Evidence of Rape

Appellant complains that he was improperly convicted of raping C on divers occasions between July 1990 and June 1994 because the government failed to prove C did not consent to the sexual intercourse. He further alleges that the military judge effectively deprived him of his defense of consent by giving an instruction on parental constructive force over defense counsel objection.

The government prosecuted SSG Young under the theory that C was "groomed" and "conditioned" to accede to her stepfather's demands from the time she was five years of age. This theory was fully supported by the testimony of two expert witnesses on child sexual abuse accommodation syndrome. In particular, this expert testimony clearly showed that the earlier in a child's life the sexual abuse begins, the more likely the child will develop child sexual abuse accommodation syndrome because of her total dependence on parental figures. Treatment of such victims is difficult because the sexual abuse interferes with the child's development. In addition to this arrested development, the child develops coping or survival mechanisms, such as disassociation, in order to distance herself from the horrific event or to reconcile parental love with parental sexual abuse.

Although Article 43, UCMJ, perhaps precluded the government from charging the appellant with the purported sexual offenses that predated June 1990, the lurid fifteen-year sexual history of SSG Young and C went before the fact finders without defense objection. See Military Rule of Evidence 404(b) [hereinafter Mil.R.Evid.].

When questioned about the consensual nature of the sexual relationship, C answered that "I could have just said no," but was too afraid of SSG Young to say "no." C also testified that after she reported appellant's sexual advances to her mother (C was about fourteen years old at the time), SSG Young apologized and the abuse temporarily stopped. Appellant was assigned in Korea between June 1989 and June 1990. When he returned to Fort Riley, the sexual abuse resumed. Cross-examination revealed that C chose to live with her abusive stepfather in Germany—even after graduating from high school, getting her driver's license, and gaining employment. In short, the defense's theory was that C was an emancipated woman who was no stranger to the opposite sex when most of the charged offenses involving sexual intercourse with her stepfather occurred. Since she never complained of being raped, she must have been a willing participant.

With the evidence in this posture, the military judge properly instructed the court-martial panel. In particular, he explained that both force and lack of consent were necessary to convict SSG Young of rape. He instructed on the various types of conduct that constitute force. In giving the standard "parental compulsion" instruction from the Dep't of Army, Pam. 27–9, Military Judges' Benchbook, (15 Feb. 1989), he informed the members that in determining whether C's resistance was overborne by constructive force in the form of parental compulsion, they were to consider all facts and circumstances surrounding the alleged offenses, the age of the child when the alleged abuse began, the child's ability to fully comprehend the nature of the acts involved, C's knowledge of parental power, and any implicit or explicit threats of punishment or physical harm if C did not obey.

This instruction did not mandate a finding of parental compulsion; rather it framed the issue in terms that allowed the members to better understand the implications of such conduct, if they found such conduct applied, on the elements of force and consent. See United States v. Davis, 47 M.J. 707 (N.M.Ct. Crim.App.1997), pet. granted, —— M.J. ——, slip op. (Dec. 17, 1998). Finally, in support of the defense's theory of the case, the mili-

tary judge instructed the members that if appellant mistakenly believed C consented to the sexual intercourse, it was not rape. *See United States v. Thomas,* 45 M.J. 661 (Army Ct.Crim.App.1997).

Relying on *United States v. Rhea,* 33 M.J. 413 (C.M.A.1991), appellant contends that parental compulsion did not and could not (as a matter of law) exist in this case because of C's chronological age. Since she was neither youthful nor vulnerable to her stepfather's authority, the dominance or control which a parent exerts over younger children could no longer, and did not, exist. *See United States v. Palmer,* 33 M.J. 7, 9 (C.M.A.1991) (quoting *State v. Etheridge,* 319 N.C. 34, 352 S.E.2d 673, 681 (1987)). Accordingly, appellant asserts the members were improperly instructed, over defense objection, on constructive force in the form of parental compulsion.

■ We reject the assertion that parental compulsion evaporates *as a matter of law* when a female reaches sixteen years of age. No case law that we can find supports such a rule. Additionally, the "parental compulsion" instruction frames the issue in terms of facts and history so as to make such a per se rule inappropriate. As any person matures, his or her *cognitive and reasoning powers,* as well as that person's ability to resist or even reject authoritative figures generally grows. However, when as here, the early sexual "programming" of a female child leads that child to mentally remove herself from a situation with which she can not cope, her ability to resist or consent does not develop commensurate with that of her peers. C's testimony makes it clear that when appellant was having sexual intercourse with her, she "wasn't there;" she would be "out running."

■ Appellant was very much an authoritative figure [5] in C's life and had conditioned his stepdaughter to submit to his abusive dominance and control where threats and displays of force were unnecessary. *See United States v. Bradley,* 28 M.J. 197, 200 (C.M.A.1989) (citing *State v. Eskridge,* 38 Ohio St.3d 56, 526 N.E.2d 304, 307 (1988)).

With the evidence in this posture, the military judge did not abuse his discretion in providing the court members instructions, tailored to the facts and circumstances of this court-martial, which accurately framed the question in terms of application of the law of parental compulsion. *See United States v. Simmons,* 48 M.J. 193, 195 (1998); *United States v. Damatta–Olivera,* 37 M.J. 474 (C.M.A.1993), *cert. denied* 512 U.S. 1244, 114 S.Ct. 2760, 129 L.Ed.2d 875 (1994); *United States v. Zimmerman,* 43 M.J. 782 (Army Ct.Crim.App.1996); *Davis,* 47 M.J. at 711.

■ Exercising our powers under Article 66, UCMJ, we have carefully weighed the evidence of record while making allowance for not having personally observed the witnesses. As was the trial court, we too are convinced of appellant's guilt beyond a reasonable doubt. *See United States v. Turner,* 25 M.J. 324 (C.M.A.1987); *United States v. Estrella,* 35 M.J. 836, 839 (A.C.M.R.1992); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). However, we note that the evidence adduced in support of Charge II, Specification 2 (rape) and Charge V, Specification 2 (adultery) shows sexual intercourse with C on but one occasion, not "divers occasions" as alleged.

### IV. Sentence

Appellant attacks his sentence to confinement for life as improper because (a) his defense counsel provided ineffective representation during the sentencing portion of trial; (b) trial counsel's argument and use of C's childhood pictures were inflammatory and improper; and (c) a sentence to life imprisonment for these crimes is too severe.

#### A. Effectiveness of Representation

When the court members returned a guilty verdict on the vast majority of the charges and specifications, SSG Young was no longer under military control—a condition that continued for over a year after his court-martial ended. During the in absentia sentencing proceedings, the government presented impact/aggravation testimony from C, C's soldier-husband of eight months, and Ms.

---

5. Civilian defense counsel requested and received the "parental discipline" instruction as a possible defense to the assault charges.

Chase, C's counselor. Defense counsel presented no evidence. According to Mr. Cohen, appellant took with him all copies of his citations, commendations, and other documentary evidence showing his performance and contributions to the Army. Counsel further opined that without SSG Young's direction or authorization, he was unable to make a statement without "jeopardizing a violation of the attorney-client privilege." [6]

The fact that appellant allegedly absconded with personal copies of extenuation and mitigation evidence from his personnel file did not absolve defense counsel of the responsibility to reconstruct the file and present the absent appellant in the best light possible, especially when the government has copies of such evidence. "It should not require an attorney of extreme competence or vast experience to realize that when representing [a noncommissioned officer] who is facing life in prison ... some extra effort may be necessary to prepare a credible case in extenuation and mitigation." *United States v. Dorsey*, 30 M.J. 1156, 1160 (A.C.M.R.1990); *see also United States v. Boone*, 49 M.J. 187, 196 n. 10 (1998) (citations omitted).

Government counsel accurately note that appellant's Personnel Qualification Record, Parts I and II were received into evidence without objection. This record reflected appellant's length of service, overseas service, records of awards and decorations, promotions, civilian and military education, aptitude test scores, and personal and family data. While we agree that this personnel record was accurate, it is a poor substitute for the actual citation/commendation accompanying any award, evaluation reports, and witnesses that can document a soldier's contributions.

■■■ The defense team presented no evidence that SSG Young had been a child victim of sexual abuse, although some evidence of appellant's own victimization was before the court via Prosecution Exhibit 2.

As the government rightly notes, whether or not to present such evidence always raises a difficult tactical question since it can be viewed as aggravating rather than mitigating. We will not "Monday morning quarterback" Mr. Cohen's tactic in this area.

Additionally, we find that any good soldier evidence presented during sentencing would have opened the door to rebuttal evidence involving appellant's unauthorized absence. *United States v. Brewer*, 43 M.J. 43, 46–47 (1995).

**B. Trial Counsel Argument**

■■■■ Trial counsel asked the court members to sentence appellant to a dishonorable discharge and confinement for life for the fifteen years of sexual abuse he had inflicted on C. During the course of his argument, trial counsel held pictures of C at seven and fourteen years of age to remind the members of C's appearance throughout the period of abuse. The military judge had admitted these pictures, over defense objection, on the merits solely to help the court members resolve the issues of consent and constructive force in the form of parental compulsion. Neither defense counsel objected to the prosecutor's argument. Accordingly, any objection was waived absent plain error. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); Mil. R.Evid. 103; Rule for Courts–Martial 1001(g). Trial counsel's impassioned argument, asking the court to *punish* appellant for the sexual abuse inflicted on "the child C" may have been a legitimate means to argue a lack of rehabilitation potential. However, it was clearly improper to ask the members to imprison SSG Young for any criminal sexual abuse of C prior to June 1990 since he was neither charged with nor convicted of committing such acts. *Weisbeck*, 48 M.J. at 576 (citing *United States v. Shamberger*, 1 M.J. 377, 379 (C.M.A.1976)), *petition for review granted*, 50 M.J. 227, No. 98–0646/AR, 1988 C.A.A.F. LEXIS 1275, at *1 (Aug. 12, 1998).

---

6. Mr. Cohen misunderstands the privilege. The client holds the privilege. It may be given up whenever it is in the client's best interests. The decision of when giving up the privilege is in the client's best interests, belongs to the attorney.

Counsel could have made a statement on appellant's behalf. Since appellant has given this court nothing that he wished Mr. Cohen to have said, any error is harmless.

We note that the members gave appellant the exact sentence requested by the trial counsel. In *Weisbeck,* 48 M.J. at 576, our court found prejudice when the trial counsel asked the members to sentence Chief Warrant Officer 2 Weisbeck for uncharged misconduct even though the military judge stopped that counsel's argument and gave a curative instruction. There was no such curative instruction in this case. *See United States v. Doctor,* 7 U.S.C.M.A. 126, 21 C.M.R. 252, 1956 WL 4578 (1956); *United States v. Nellum,* 21 M.J. 700, 701 (A.C.M.R.1985) (citing Mil.R.Evid. 103(d)). When a prosecutor asks a court to punish any offender for fifteen years of crime, no matter how vile that crime, when the offender has only been charged with, and convicted of, committing that crime over a four year period, we find plain error and a "fair risk that the accused was prejudiced by the prosecutor's remarks." *Shamberger,* 1 M.J. at 379; *Weisbeck,* 48 M.J. at 576; *see also United States v. Powell,* 49 M.J. 460 (1998); *United States v. Reist,* 50 M.J. 108 (1999); *United States v. Ingham,* 42 M.J. 218, 230 (1995); *United States v. Clifton,* 15 M.J. 26, 30–31 (C.M.A.1983).

Having considered the totality of circumstances, we are convinced that appellant was prejudiced by trial counsel's improper argument. His defense counsel's failure to present any mitigation evidence (which did not, in and of itself, make defense counsel ineffective), aggravated this prejudice. Because of the nature of the sentencing record before us, we are unable to reassess the sentence. *See United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

We find the remaining assignments of error to be without merit. We also find that the matters personally raised by the appellant, to include his supplemental assignment of error, pursuant to *Grostefon,* 12 M.J. 431, to be meritless.

The Court affirms only so much of the findings of guilty of Specification 2 of Charge II as finds that appellant did, between on or about 1 May 1994 and 16 June 1994, rape [C], a woman not his wife; and of Specification 2 of Charge V as finds that appellant, a married man, did, between on or about 1 May 1994 and 16 June 1994, wrongfully have sexual intercourse with his stepdaughter [C], a woman not his wife. The remaining findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge JOHNSTON and Judge ECKER concur.