UNITED STATES, Appellee,

v.

Inmate Larry D. YOUNG, United States Army, Appellant.

ARMY 20000358.

U.S. Army Court of Criminal Appeals.

22 April 2005.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Jeanette K. Stone, JA; Captain Christopher D. Carrier, JA (on brief); Lieutenant Colonel Mark Tellitocci, JA; Major Sean S. Park, JA; Captain Jeremy W. Robinson, JA (on specified issue brief); Captain Lonnie J. McAllister II, JA.

For Appellee: Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Theresa A. Gallagher, JA; Captain Abraham F. Carpio, JA (on brief); Colonel Steven T. Salata, JA; Lieutenant Colonel Mark L. Johnson, JA; Major Natalie A. Kolb, JA; Captain Abraham F. Carpio, JA (on specified issue brief).

Before MERCK, Senior Judge, JOHNSON, and MOORE, Appellate Military Judges.

## OPINION OF THE COURT

MOORE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of desertion terminated by apprehension, assault consummated by a battery (four specifications), and soliciting another to commit assault, in violation of Articles 85, 128, and 134, Uniform Code of

Military Justice, 10 U.S.C. §§ 885, 928, and 934 [hereinafter UCMJ]. The members sentenced appellant to a dishonorable discharge, confinement for three years, and forfeiture of all pay and allowances. The convening authority approved the sentence as adjudged.

The case is before this court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. We have considered the record of trial, appellant's assignment of error, the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and the government's reply thereto. Although we find no merit in the errors as specifically alleged by appellant, we specified the following issues in an attempt to clarify his claim of dilatory pretrial processing:

I.

WHETHER THE DA FORM 4833, SIGNED BY THE CHIEF OF STAFF OF THE [UNITED STATES DISCIPLINARY BARRACKS] U.S.D.B., INDICATING THAT APPELLANT'S COMMAND HAD "DECLINED PROSECUTION" OF THE DESERTION CHARGE PREFERRED ON 14 NOVEMBER 1996, AMOUNTED TO A DISMISSAL OF THE CHARGE. *COMPARE* R.C.M. 401(c)(1) *WITH* R.C.M. 306(c)(1).

II.

WHETHER, IF THERE WAS NO DISMISSAL OF THE ORIGINALLY PREFERRED CHARGE, APPELLANT'S RIGHT TO A SPEEDY TRIAL ON THE DESERTION CHARGE UNDER R.C.M. 707 WAS VIOLATED.

1. Appellant was convicted by a panel of willfully disobeying a superior commissioned officer (two specifications), rape (five specifications), assault consummated by battery (two specifications), and adultery (five specifications).

2. After this court set aside his sentence, appellant was released from post-trial confinement, placed in pretrial confinement, and attached to Headquarters Company, Combined Arms Center, Fort Leavenworth, Kansas.

Appellant asserts that the DA Form 4833, Commander's Report of Disciplinary or Administrative Action, signed by the Chief of Staff of the United States Disciplinary Barracks (USDB) was not a dismissal of the originally preferred charge of desertion and that the government consequently violated his right to a speedy trial on that charge. The government argues that there was a proper dismissal of the charge and that appellant's speedy trial rights were not violated. We agree with appellant and will grant relief in our decretal paragraph.

*BACKGROUND*

Appellant's first court-martial occurred in June 1995.[1] After the announcement of findings, but prior to sentencing, appellant absented himself from his unit without authority. In absentia, he was sentenced to, *inter alia*, confinement for life.

On 14 November 1996, a charge of desertion was preferred against appellant by his original commander. On 1 May 1997, appellant was apprehended and subsequently began serving his sentence to confinement from his first court-martial at the USDB, Fort Leavenworth, Kansas. In June or July 1997, the Chief of Staff of the USDB, Lieutenant Colonel (LTC) Floyd D. Williams, signed a DA Form 4833 which indicated that "[b]oth Inmate Young's prior command and the USDB have declined prosecution of the desertion offense."

On 21 April 1999, this court set aside the sentence adjudged at the 1995 court-martial. *United States v. Young*, 50 M.J. 717 (Army Ct.Crim.App.1999). On 21 May 1999, appellant's new commander[2] preferred a charge of desertion against appellant. This charge apparently covered the same offense alleged in the charge preferred on 14 November 1996.[3] In August 1999, a sentence rehearing

3. The November 1996 specification covered the time from the inception of appellant's absence until appellant was "dropped from rolls as a deserter on 22 July 1995." The charge preferred on 21 May 1999 alleged the entire period of the absence, from 23 June 1995 "until he was apprehended on or about 2 May 1997." The two specifications alleged different time periods because the 14 November 1996 charge was preferred prior to appellant being apprehended. However, the two specifications allege the same

was held for the charges of which appellant was convicted in 1995 and appellant received a sentence including ninety years of confinement.

On 23 August 1999, after the sentence rehearing, the desertion charge, preferred on 21 May 1999, was dismissed.[4] The charge was again preferred on 14 October 1999 by the Commander of the Correctional Holding Detachment, USDB, and referred to a court-martial with other charges on 20 December 1999. Appellant was tried on those charges on 17 February and 26–27 April 2000. The defense moved to dismiss the desertion charge, alleging that the DA Form 4833 amounted to a dismissal with prejudice or, in the alternative, that appellant's right to a speedy trial had been violated. The military judge ruled that the original charge, preferred on 14 November 1996, had been dismissed by the commander and that the DA Form 4833 memorialized that decision. The military judge consequently ruled that the government had not violated appellant's right to a speedy trial.

*LAW*

Rule for Courts–Martial [hereinafter R.C.M.] 306(a) provides that "[e]ach commander has discretion to dispose of offenses by members of that command. Ordinarily the immediate commander of a person accused or suspected of committing an offense triable by court-martial initially determines how to dispose of that offense." The rule provides five ways offenses may be disposed of including (1) no action; (2) administrative action; (3) nonjudicial punishment; (4) disposition of charges in accordance with R.C.M. 401; and (5) forwarding the matter to a superior or subordinate authority for disposition. R.C.M. 306(c). Rule for Courts–Martial 401, cross-referenced in R.C.M. 306(c)(4), provides that "a commander may dispose of charges by dismissing any or all of them, forwarding any or all of them to another commander for disposition, or referring any or all of them to a court-martial which the commander is empowered to convene." R.C.M. 401(c).

Once charges have been preferred, R.C.M. 707 provides that the accused shall be brought to trial within 120 days. R.C.M. 707(a)(1). "A failure to comply with the right to a speedy trial will result in dismissal of the affected charges." R.C.M. 707(d). The dismissal can be with or without prejudice depending on factors such as "the seriousness of the offense; the facts and circumstances of the case that lead to dismissal; the impact of a reprosecution on the administration of justice; and any prejudice to the accused resulting from the denial of a speedy trial." *Id.* A military judge's decision that this right has not been violated is reviewed *de novo* on appeal. *United States v. Cooper,* 58 M.J. 54, 57 (C.A.A.F.2003).

*DISCUSSION*

The Rules for Courts–Martial distinguish between a decision to take no action on an offense and a decision to dismiss the charges. *See* Francis A. Gilligan & Fredric I. Lederer, Court-Martial Procedure § 8–13.20 (2d ed.1999) (stating that "[j]ust as a commander making an initial disposition decision may choose to take no action concerning an allegation of an offense, a commander may dismiss charges"). The two methods of disposition are found in separate provisions of the rules, indicating that they are distinct courses of action a commander may take. *Compare* R.C.M. 306(c)(1) *with* 401(c). The discussion section to R.C.M. 306(c)(1) also makes clear that the two methods of disposition are different, stating that "[a] decision to take no action *or* dismissal of charges ... does not bar later disposition of the offenses ...." (emphasis added).

Moreover, contrary to a decision to take no action, dismissal of charges requires an affir-

---

offense of desertion because "[d]esertion with intent to remain away permanently is complete when the person absents himself or herself without authority from his or her unit ... with the intent to remain away therefrom permanently." *Manual for Courts–Martial, United States* (1995 ed.), Part IV, para. 9c(1)(a).

4. The dismissal memorandum is undated, but the military judge found as fact that the dismissal occurred on 23 August 1999, the date the dismissal document was served on appellant and his defense counsel.

mative act.[5] *See United States v. Bolado,* 34 M.J. 732, 737 (N.M.C.M.R.1991) (stating that "[d]ismissal occurs when action is taken by a commander that terminates the charges"). While no particular form is required, *some* action must be taken in order to accomplish a dismissal of the charges. Ordinarily, this is accomplished by an action as simple as "lining out and initialing the deleted specifications or otherwise recording that a specification is dismissed." R.C.M. 401(c) discussion.

In this case, the Chief of Staff of the USDB signed a DA Form 4833 indicating that both appellant's prior and current commands had declined prosecution of the desertion offense preferred on 14 November 1996. Nothing in the document indicates that any commander took any action to dismiss the charge. Instead, it appears to merely document the decision by both commands to take no action on the offense, as allowed by R.C.M. 306(c)(1). This interpretation is supported by an affidavit provided by LTC (Ret.) Floyd D. Williams, the former Chief of Staff of the USDB who signed the DA Form 4833, after we specified the issues relating to the dismissal/speedy trial issue. In the affidavit, Mr. Williams states:

> The DA Form 4833 arrived at the USDB to determine the actions taken against [appellant] for the charge of desertion. I recall the Commandant and I discussed the desertion case and attempted to sort out what was the appropriate action to take and report. It was determined, after consulting with the USDB Command Judge Advocate ... that *no action* should be taken due to the fact that the case was no longer a strong issue with the chain of command in Germany.... After reviewing the legal recommendations and guidance from DA and discussing the courses of action with the Commandant, ... it was

decided that *no action* would be taken at that time.

(Government Appellate Exhibit A) (emphasis added). Consequently, we find no evidence that the desertion charge, originally preferred on 14 November 1996, was ever dismissed.

▇ Appellant was out of military control from 23 June 1995 until he was apprehended and taken to the USDB at the beginning of May 1997. Government accountability for speedy trial purposes on the new charges began when appellant returned to military control. *See United States v. Dies,* 45 M.J. 376, 378 (C.A.A.F. 1996). Appellant was confined for other charges at the USDB for over two years before the government took action on the desertion charge, with no indication that any of this time qualified as excludable delay. Consequently, the requirement that appellant be brought to trial within 120 days of preferral of charges was violated. *See* R.C.M. 707.

▇ The violation of R.C.M. 707 was not remedied by the fact that appellant was not ultimately tried on the charge of desertion preferred on 14 November 1996, but on a new charge of desertion preferred on 14 October 1999. The rule mandates speedy trial on an offense, regardless of which particular charge or specification describing that offense is the subject of the prosecution. Thus, the government cannot cure a violation of R.C.M. 707 by simply preferring a new charge covering the same offense and proceeding to trial on that charge.[6] Accordingly, the affected charge in this case must be dismissed.

In this case, the speedy trial violation was not due to the government's need to obtain evidence or witnesses for trial or any other administrative preparation, but simple lack of

---

5. Rule for Courts–Martial 306(c)(1) states that when a commander decides to take no action on an offense, charges may be dismissed if they have been previously preferred. This provision indicates that something beyond a decision not to proceed on the charges must be done in order to accomplish dismissal of the charges.

6. One of the remedies for a violation of R.C.M. 707 is dismissal with prejudice "to the govern-

ment's right to reinstitute court-martial proceedings against the accused for the same offense at a later date." R.C.M. 707(d). This clearly indicates that R.C.M. 707 is offense, rather than charge, driven. Further support for this view is found in the fact that the speedy trial clock starts when pretrial restraint is imposed, regardless of whether a particular charge has been preferred. R.C.M. 707(a)(2).

interest in prosecution. Appellant received a life sentence at his first court-martial and, according to the affidavit submitted by LTC (ret.) Williams, "the case was no longer a strong issue" with appellant's former chain of command. It was not until this court set aside appellant's life sentence that the government's interest in pursuing this prosecution was rekindled. Therefore, considering the factors enumerated in R.C.M. 707, we find it appropriate to dismiss the charge with prejudice under the circumstances of this case.

Accordingly, the findings of guilty to Charge I and its Specification are set aside and Charge I and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for eighteen months, and forfeiture of all pay and allowances.

Senior Judge MERCK and Judge JOHNSON concur.